RUTH HARRIS CRUMPTON; RUTH C. GREEN AND HUSBAND, ED-
WARD W. GREEN, JR.; REBECCA C. SAUNDERS AND HUSBAND,
CLINTON L. SAUNDERS; DIANA C. TUCK AND HUSBAND, TONY
M. TUCK AND MARIAN C. MONK AND HUSBAND, THOMAS A.
MONK, SR. v. MALCOLM H. CRUMPTON AND WIFE, SANDRA H.
CRUMPTON; EMMET GARRETT CRUMPTON AND WIFE, JUDY
S. CRUMPTON; WILLIAM R. CRUMPTON III AND WIFE, KAREN
L. CRUMPTON; HARRIS CRIGGER CRUMPTON AND WIFE, DEB-
BIE CRUMPTON; STEVE CRUMPTON AND WIFE, SHARON
CRUMPTON; BROOKS CRUMPTON, SINGLE; KNOX MITCHELL,
SINGLE; GEORGE EDWARD MITCHELL AND WIFE, MARY
MITCHELL; ROSE C. GREGORY, WIDOW; SHARON LYNN
CRUMPTON; TONIA ROBIN CRUMPTON; LISA ANN CRUMP-
TON; DOUGLAS JAY CRUMPTON; CHAD ALLEN CRUMPTON;
MISHA CRUMPTON; SHANEL CRUMPTON; WILLIAM ROBERT
CRUMPTON IV; SANDRA JOYCE CRUMPTON; RONDA LYNN
CRUMPTON; AMY GARRETT GREEN; BRENDA GAIL SAUN-
DERS; CLINTON MARK SAUNDERS; WILLIAM MERRITT
SAUNDERS; ANTHONY DARRON SAUNDERS; CHRISTOPHER
JASON SAUNDERS; TONY MARTIN TUCK, JR.; THOMAS A.
MONK, JR. AND WIFE, CAROLYN MONK; TAMMY MONK;
CHRISTY MONK; CHARLES WILLIAM MONK; PAMELA GREG-
ORY; MICHELLE MITCHELL; MRS. G. K. HARRIS, WIDOW;
DOLIAN HARRIS AND WIFE, JANE KIRBY HARRIS; GEORGE
E. HARRIS AND WIFE, KATHRINE HARRIS; JESSIE H. WADE,
WIDOW; DOROTHY G. HARRIS, WIDOW; ROBERT EARL JAMES,
SR., WIDOWER; BENJAMIN WILLIAM JAMES AND WIFE, JOYCE
EVERETTE JAMES; ROBERT E. JAMES, JR. AND WIFE, GRACE
F. JAMES; BETTY J. THOMPSON, WIDOW; KATIE HARRIS, SIN-
GLE; CORINE H. GRANT, WIDOW; ELLA H. WINSTEAD AND HUS-
BAND, FRANK WINSTEAD, SR.; AND NETTIE LOU BULLOCK

No. 80

(Filed 1 September 1976)

1. Estates § 7— land given to life tenant with remainder to issue — de-
termination of remainder interest premature

In a special proceeding pursuant to G.S. 41-11 for a private sale
of land with the proceeds of the sale to be held in trust for the life
tenant and at her death the proceeds remaining to be distributed to
her issue then living, *per stirpes*, the Court of Appeals erred in de-
termining prematurely an issue as to whether certain parties were
contingent remaindermen in the subject land and therefore possibly
entitled ultimately to the proceeds from the sale thereof.

2. Estates § 7— vested interest in property — remaindermen not deter-
mined — statute providing for sale of land

A close examination of G.S. 41-11 reveals that its purpose is not
to obtain predictive declarations of future rights of the parties,
*inter se*, but rather to promote the interest of all the parties by
allowing the sale of desirable land free from restrictions imposed by
the presence of uncertainties as to whom the land will ultimately
belong. The statute contemplates that the proceeds of the sale, less

expenses and perhaps the present worth of the life tenant's share, will be reinvested, either in purchasing or in improving real estate.

ON appeal pursuant to General Statute 7A-30(1) (substantial constitutional question) from a decision of the Court of Appeals reported at 28 N.C. App. 358, 221 S.E. 2d 390 (1976). Since no substantial constitutional question is presented, as will appear hereinafter, we dismiss the appeal and treat the papers as a petition for writ of certiorari pursuant to General Statute 7A-32(b).

The facts are not in dispute. On December 1, 1941, G. E. Harris and wife conveyed a tract of land in Person County to "Ruth Harris Crumpton for the term of her natural life, with remainder to her living issue *per stirpes* . . . . " The habendum clause of the deed provided that the grantee should hold the land "for and during the term of natural life, and at her death to her issue then living, *per stirpes;* Provided, however, that if she has no issue then living said land shall revert to the heirs at law of the grantor G. E. Harris." Ruth Harris Crumpton is still living. Two of her children are still living. A son, William Robert Crumpton, Jr., is deceased and left surviving him six children all of whom are now living. Another son, George Edward Crumpton, had five children before his death in 1962. Two of his children, George Edward Mitchell, born in 1943, and Edgar Knox Mitchell, born in 1945, were adopted from him on June 13, 1955. These two children were born to him by the wife of his first marriage; they are still living and are the appealing respondents in this action. George Edward Mitchell has a daughter, Michelle. By a second marriage, George Edward Crumpton had three children, Harris, Steve and Brooks, who are also now living and are respondent appellees here.

On December 9, 1974, petitioner Ruth Harris Crumpton *et al.* brought a special proceeding pursuant to General Statute 41-11 for a private sale of the land with the proceeds of the sale to be held in trust for the life tenant and at her death the proceeds remaining to be distributed "according to law and according to the terms of the said Deed."

The only issue purportedly presented is whether the two Mitchell children (or their issue) should ultimately share in the proceeds of the sale. The clerk entered an order directing a sale of the land and providing that George Edward Mitchell and Edgar Knox Mitchell would share in the proceeds of sale

if they survived Ruth Crumpton and if either or both should predecease her their children would take in the same manner as children of the other three children of George Edward Crumpton. To this conclusion of law the other three children of George Edward Crumpton, Harris, Steve, and Brooks, excepted and appealed to the superior court. After a hearing that court entered an order concluding as a matter of law that respondents, George Edward Mitchell and Edgar Knox Mitchell, "by virtue of the Final Order of Adoption dated June 13, 1955, were removed from the bloodline of Ruth Harris Crumpton and own no remainder interest, vested or contingent, in the subject lands or in the proceeds from the sale thereof . . . . " From this order Edgar Knox Mitchell and George Edward Mitchell appealed as did the guardian *ad litem* for Michelle Mitchell and other unborn or unknown issue. The Court of Appeals affirmed.

*Ronnie P. King, for Respondent Appellants Edgar Knox Mitchell, George Edward Mitchell and wife, Mary Mitchell.*

*Alan S. Hicks, Guardian Ad Litem for Respondent Appellant Michelle Mitchell and any unknown or unborn persons being or being asserted to be the issue of Edgar Knox Mitchell or George Edward Mitchell.*

*Graham, Manning, Cheshire & Jackson, by Lucius M. Cheshire for Respondent Appellees Harris Crigger Crumpton, Steve Crumpton and Brooks Crumpton.*

EXUM, Justice.

Appellants took their appeal to this Court claiming that the judgment of the superior court deprived them of property without Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Law of the Land provision of Article I § 19 of the North Carolina Constitution. This appeal is dismissed. The interest of the appellants is still contingent, *Strickland v. Jackson,* 259 N.C. 81, 130 S.E. 2d 22 (1963). If appellants are ultimately denied an interest in this property by operation of the statutes relied upon by the Court of Appeals, e.g., General Statutes 48-6 (1941) and 48-23 (1966), it is now settled that such "statutes destroying or diminishing *contingent interests* in property do not, per se, deprive the holder thereof of property without due process of law . . . or violate any other constitutional limitation upon legislative power. *Stanback v. Citizens National Bank,* 197 N.C. 292, 148 S.E. 313 [1929]." *Peele v. Finch,* 284 N.C. 375,

Crumpton v. Crumpton

200 S.E. 2d 635 (1973). (Emphasis added.) There was no substantial constitutional question upon which to predicate this appeal.

[1] However, because of error in the opinion of the Court of Appeals in deciding prematurely the issue purportedly presented, we treat the appeal as a petition for writ of certiorari, vacate the decision of the Court of Appeals and remand for further proceedings.

General Statute 41-11 under which this proceeding was brought provides:

"In all cases where there is a vested interest in real estate, and a contingent remainder over to persons who are not in being, or when the contingency has not yet happened which will determine who the remaindermen are, there may be a sale, lease or mortgage of the property by a special proceeding in the superior court . . . .

"The court shall, if the interest of all parties require or would be materially enhanced by it, order a sale of such property or any part thereof for reinvestment, either in purchasing or in improving real estate, less expense allowed by the court for the proceeding and sale, and such newly acquired or improved real estate shall be held upon the same contingencies and in like manner as was the property ordered to be sold. The court may authorize the loaning of such money subject to its approval until such time when it can be reinvested in real estate. And after the sale of such property in all proceedings hereunder, where there is a life estate, in lieu of said interest or investment of proceeds to which the life tenant would be entitled to, or to the use of, the court may in its discretion order the value of said life tenant's share during the probable life of such life tenant, to be ascertained as now provided by law, and paid out of the proceeds of such sale absolutely, and the remainder of such proceeds be reinvested as herein provided . . . .

"The clerk of the superior court is authorized to make all orders for the sale, lease or mortgage of property under this section, and for the reinvestment or securing and handling of the proceeds of such sales . . . .

"The court may authorize the temporary reinvestment, pending final investment in real estate, of funds derived from such sale in any direct obligation of the United States of America or any indirect obligation guaranteed both as to principal and interest or bonds of the State of North Carolina . . . but in the event of such reinvestment, the commissioners, trustees or other officers appointed by the court to hold such funds shall hold the bonds in their possession and shall pay to the life tenant and owner of the vested interest in the lands sold only the interest accruing on the bonds, and the principal of the bonds shall be held subject to final reinvestment and to such expense only as is provided in this section."

[2] A close examination of the statute reveals that its purpose is not to obtain predictive declarations of future rights of the parties, *inter se,* but rather to promote the interest of all the parties by allowing the sale of desirable land free from restrictions imposed by the presence of uncertainties as to whom the land will ultimately belong. The statute contemplates that the proceeds of the sale, less expenses and perhaps the present worth of the life tenant's share, will be reinvested, either in purchasing or in improving real estate. As was stated in *Dawson v. Wood,* 177 N.C. 158, 163, 98 S.E. 459, 461 (1919), "[In 1905] this reinvestment in realty was required to be within two years, but such requirement was removed by the later [1907 act] leaving the matter of reinvestment somewhat in the discretion of the court, but with clear intimation that the fund should be reinvested in realty when an advantageous opportunity should be offered." *Cf. Pendleton v. Williams,* 175 N.C. 248, 255, 95 S.E. 500, 503 (1918). ("[T]he court may authorize the loaning of the money, subject to its approval, until such time as it can be reinvested in real estate.")

The statute specifically allows temporary reinvestment pending final investment in real estate. When new real estate is acquired or improved General Statute 41-11 requires that it "be held upon the same contingencies and in like manner as was the property ordered to be sold." Although this requirement is not stated in regard to the temporary fund held pending final reinvestment, it is obviously contemplated that the temporary fund be also "held upon the same contingencies . . . . "

General Statute 41-11.1 (1975 Cum. Supp.), a comparable statute, provides that:

> "In the event of a sale of any such property, the proceeds of sale shall be owned in the identical manner as the property was owned immediately prior to the sale; provided,
>
> > (1) The trustee appointed by the clerk as provided above may hold, manage, invest and reinvest said proceeds for the benefit of all members of the class, both those in esse and those not in esse, until the occurrence of the event which will finally determine the identity of all members of the class . . . . "

Under General Statute 41-11 it is only for the purpose of determining who must be summoned and made a defendant that the clerk need decide who is presently "interested in the land." Here there is no question that all who might become interested have been properly summoned and made respondents. If appellants had opposed the sale it might have been necessary for the clerk to determine whether they were "interested in the land" so as to have standing to contest the sale. The respondent appellants did not, however, oppose the sale but rather joined in the prayer for the sale.

We conclude that the clerk erred as did the judge in determining the ultimate disposition of the fund. That action was premature and not authorized by the statute. Many events may obviate the need to determine the question answered by the clerk, judge, and Court of Appeals: (1) The life tenant is still living. Respondent appellants and those claiming through them may not survive her. (2) Before her death the General Assembly may speak more specifically to the precise situation here— the right of those adopted out of a family to take as "issue" of that family when a deed grants a remainder to "issue." (3) This lawsuit involves the sale of land worth $70,000. However, the amount contested is the remainder interest in only one-tenth of that amount. It is highly conceivable that appellants and appellees, half-brothers by birth, could reach an amicable settlement before their contingent interest vests at the death of the life tenant.

Our research reveals no similar case. An instructive case, albeit distinguishable, is *Reina v. Bracho,* 256 F. 834 (5th Cir. 1919). That case arising out of the Canal Zone was a bill in

equity praying for a partition in kind or a sale for division of the proceeds of lands in which the appellant had a one-eighteenth interest. The lands in question had been taken in possession by the United States for the use of the canal and appellants had filed a claim for compensation with a joint commission created by the Panama Canal treaty for the settlement of claims. That claim was pending. Partition was denied since the party in possession under a claim of right—the United States—was not made a party. As to the claim that appellant was entitled in this action to a division of the expected proceeds the Fifth Circuit held: "A judicial controversy is premature when it is started before the subject matter of it has come into existence and before it is known whether if it shall come into existence the claimant will need any relief in addition to that given by the tribunal the action of which brings it into existence. It is not yet known whether there will be any fund that could be dealt with by the orders of the court at the instance of the appellant, or that, if there shall be such a fund, there will be any occasion for granting relief to the appellant with reference to it." In this case the fund is in existence but it will not be known until the death of the life tenant whether there will be a controversy in respect to its distribution.

An analogous, though factually distinguishable, situation was dealt with by this Court in *Koob v. Koob*, 283 N.C. 129, 195 S.E. 2d 552 (1973). There in an action by the wife for alimony without divorce, the district court ordered the trustee in a deed of trust on real property held by the wife and husband as tenants by the entirety to pay into the clerk's office one-half of the net proceeds of any future foreclosure sale of the realty to secure certain obligations found to be due the wife by the husband. The trustee was further ordered to pay the other half of the net proceeds directly to the wife. Thereafter a foreclosure sale was conducted by the trustee who paid, with permission of the district court, the entire net proceeds thereof to the clerk. The clerk was then made a party defendant and ordered by the district court to disburse the proceeds in the same manner as the trustee had been earlier ordered to do. On the clerk's appeal to this Court, the district court's orders purporting "to adjudge the respective rights of plaintiff and defendant [in the alimony action] in the fund" were vacated as being premature. This Court saw the key legal question as whether the foreclosure sale dissolved the tenancy by entirety in the net proceeds. The Court was of the opinion that this question could not properly be an-

ticipated and determined in the alimony action brought *before* the foreclosure had taken place and therefore before the question had in fact arisen at least without more specific notice to the husband as to the plaintiff's claim against the net proceeds.

We express no opinion on the correctness of the decision of the Court of Appeals on the issue which it erroneously reached. The Court of Appeals erred in deciding this issue prematurely. Its decision is vacated. The case is remanded to the Court of Appeals with instructions to remand it to the superior court for such further proceedings as may be required by law.

Each party will pay his own costs in each court. *Cf. Utilities Commission v. Southern Bell Telephone Co.*, 289 N.C. 286, 221 S.E. 2d 322 (1976) and *Wikel v. Board of Commissioners*, 120 N.C. 451, 27 S.E. 117 (1897).

Decision of Court of Appeals vacated.

Error and remanded.