HARRIS C. CRUMPTON AND WIFE, DEBBIE CRUMPTON, STEVE CRUMPTON AND WIFE, SHARON CRUMPTON, AND BROOKS CRUMPTON (SINGLE), PETITIONERS v. KNOX MITCHELL (SINGLE), AND GEORGE E. MITCHELL AND WIFE, MARY MITCHELL, RESPONDENTS

No. 85

(Filed 17 August 1981)

**Descent and Distribution § 5— deed granting remainder to issue—child adopted out of family**

    In enacting G.S. 48-23 the legislature contemplated that upon a final order of adoption a complete substitution of family would take place with the adopted child becoming the child of his adoptive parents and a member of their family, and the legal relationship with the child's natural parents and family would by virtue of the adoption order be completely severed; therefore, those adopted out of a family may not take as "issue" of that family under a deed granting a remainder to issue.

    Justice MEYER did not participate in the consideration and decision of this case.

ON discretionary review prior to determination by the Court of Appeals. This case was argued as No. 39, Fall Term 1980.

*Graham & Cheshire by D. Michael Parker, Attorneys for petitioner appellees.*

*Burke and King by Ronnie P. King, Attorneys for respondent appellants.*

EXUM, Justice.

By order entered at the 20 December 1979 Session of Person Superior Court Judge Anthony Brannon concluded as a matter of law that respondents were not entitled to share in certain proceeds passing under a deed. The sole question presented is

whether those adopted out of a family take as "issue" of that family under a deed granting a remainder to "issue." We conclude that they do not and affirm the decision of the trial court.[1]

The facts are not in dispute. On 1 December 1941 G.E. Harris and wife Valeria Harris conveyed a tract of land in Person County to "Ruth Harris Crumpton for the term of her natural life, with remainder to her living issue, *per stirpes* . . . . " The habendum clause of the deed provided that Ruth Crumpton should hold the land "for and during the term of [her] natural life, and at her death to her issue then living, *per stirpes*; Provided, however, that if she has no issue then living said land shall revert to the heirs at law of the grantor G. E. Harris."

Pursuant to an Order of Sale dated 7 May 1975 the land so conveyed was sold and the proceeds invested by the Clerk of Superior Court of Person County with the interest thereon payable to Ruth Crumpton during her lifetime and the corpus held for distribution upon her death to her then living issue, *per stirpes*. At some date after the sale Ruth Crumpton took a lump sum payment in lieu of her right to the interest. The clerk invested the remaining funds for ultimate distribution upon her death to her then living issue, *per stirpes*.

Ruth Crumpton is now dead. She had five children, two of whom, Valeria and Rosie, survive her. A third daughter, Elaine, is deceased and left no children. Ruth Crumpton's two sons, William Robert and George Edward, are both deceased and left, respectively, six and five children, all of whom survive her. The Clerk of Superior Court of Person County has distributed, *per stirpes*, three-fourths of the approximately $70,000 available for distribution to the issue of Ruth Crumpton: One-fourth to Valeria; one-fourth to Rosie; and one-fourth divided equally among William Robert's six children. This lawsuit concerns division of the remaining one-fourth interest among George Edward's five children.

---

1. The controversy herein presented has been previously decided by the Court of Appeals. *Crumpton v. Crumpton*, 28 N.C. App. 358, 221 S.E. 2d 390 (1976). Without expressing our view as to the merits, we vacated this opinion on the ground it was prematurely decided. *Crumpton v. Crumpton*, 290 N.C. 651, 227 S.E. 2d 587 (1976). The matter having become ripe for decision, we now agree with the result reached by the Court of Appeals in its earlier decision.

Two of George Edward's children, Knox Mitchell and George Mitchell, both born to him by the wife of his first marriage, were on 13 June 1955 adopted *from* him, *i.e.*, they were adopted out of the Crumpton family. As part of the order granting the petition to sell the land conveyed to Ruth Crumpton the clerk ordered that Knox Mitchell and George Mitchell share equally with George Edward's other three children that portion of the sale proceeds which George Edward would have received had he survived Ruth Crumpton. The other children appealed. By order dated 6 June 1975 Judge Clark concluded that "as a Matter of Law . . . George Edward Mitchell and Edgar Knox Mitchell . . . own no remainder interest, vested or contingent, in the subject lands or in the proceeds from the sale thereof."

The Court of Appeals affirmed Judge Clark's order, *Crumpton v. Crumpton,* 28 N.C. App. 358, 221 S.E. 2d 390 (1976). The Court of Appeals held that on 13 June 1955, the date of the final order of adoption, Knox Mitchell and George Mitchell "became legal strangers to the bloodline of their father, the son of the grantee in the deed conveying the property. No interest in the property had vested in them, and at that time, they, by force of the statute, ceased to be children of George Edward Crumpton and became the children of their parents by adoption." *Id.* at 364, 221 S.E. 2d at 394.

This Court, in an opinion reported at 290 N.C. 651, 227 S.E. 2d 587 (1976), vacated the decision of the Court of Appeals. After first concluding that there was no substantial constitutional question upon which to base the appeal, we treated the appeal as a petition for writ of certiorari and held that the Court of Appeals erred in prematurely determining the ultimate disposition of the fund.[2] We expressed no opinion as to the correctness of its decision on the issue it erroneously reached.

---

2. We noted that:

"Many events may obviate the need to determine the question answered by the clerk, judge, and Court of Appeals: (1) The life tenant [Ruth Crumpton] is still living. Respondent appellants [Knox Mitchell and George Mitchell] and those claiming through them may not survive her. (2) Before her death the General Assembly may speak more specifically to the precise situation here—the right of those adopted out of a family to take as 'issue' of that family when a deed grants a remainder to 'issue.' (3) This lawsuit involves the sale of land worth $70,000. However, the amount contested is the remainder interest in only one-tenth of that amount. It is highly conceivable that appellants and appellees, half-brothers by birth, could reach an amicable settlement before their contingent interest vests at the death of the life tenant." 290 N.C. at 656, 227 S.E. 2d at 592.

Upon the death of Ruth Crumpton the other children of George Edward, petitioner-appellees, again caused this matter to be heard by the Clerk of Person Superior Court. The clerk concluded that Knox Mitchell and George Mitchell, respondent-appellants, were by virtue of their adoption removed from the bloodline of George Edward Crumpton and enjoyed "no remainder interest in the proceeds of the sale of the land in question." Judge Brannon, by order entered 20 December 1979, reached the same conclusion.[3] On 3 June 1980 we allowed the parties' joint motion for discretionary review prior to determination by the Court of Appeals.

The question, then, before us is whether those adopted out of a family may take as "issue" of that family under a deed granting a remainder to "issue."

Petitioner-appellees, urging a negative answer, contend that G.S. 48-23 is relevant in that it provides "guidance to the effect that adoption severs the legal child-parent relationship between the adopted child and natural parent." G.S. 48-23 provides in pertinent part:

"*Legal effect of final order.* — The following legal effects shall result from the entry of every final order of adoption:

(1) The final order forthwith shall establish the relationship of parent and child between the petitioners and child, and from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property by, through, and from the adoptive parents in accordance with the statutes relating to intestate succession. An adopted child shall have the same legal status, including all legal rights and obligations of any kind whatsoever, as he would have had if he were born the legitimate child of the adoptive parent or parents at the date of the signing of the final order of adoption, except that the age of the child shall be computed from the date of his actual birth.

---

3. This order was amended *nunc pro tunc* on 12 February 1980 to correct typographical omissions in the original order.

(2) The natural parents of the person adopted, if living, shall, from and after the entry of the final order of adoption, be relieved of all legal duties and obligations due from them to the person adopted, and shall be divested of all rights with respect to such person. This section shall not affect the duties, obligations, and rights of a putative father who has adopted his own child.

(3) From and after the entry of the final order of adoption, the words 'child,' 'grandchild,' 'heir,' 'issue,' 'descendant,' or an equivalent, or the plural forms thereof, or any other word of like import in any deed, grant, will or other written instrument shall be held to include any adopted person, unless the contrary plainly appears by the terms thereof, whether such instrument was executed before or after the entry of the final order of adoption and whether such instrument was executed before or after the enactment of this section."

Respondent-appellants contend that they are entitled to take under the deed since this Court has defined "issue" as meaning "all persons descended from a common ancestor." *Bradford v. Johnson*, 237 N.C. 572, 581, 75 S.E. 2d 632, 638 (1953). Thus, they argue, despite their adoption out of the Crumpton family they are still persons descended from Ruth Crumpton. Respondent-appellants further contend that G.S. 48-23 has no bearing on this controversy since "[t]he legislature, by virtue of G.S. 48-23, has spoken relative to the right of an adopted child to 'inherit' by, through, or from its natural parents, but there is no such guidance where the remainder interest is created by deed." We disagree, and conclude that in enacting G.S. 48-23 our legislature has in fact given clear guidance applicable to the present controversy.

I

The Court of Appeals, after a thorough discussion of the original North Carolina adoption statute and its evolution into current G.S. 48-23, concluded that the General Assembly has "evidenced its intent that by adoption the child adopted becomes legally a child of its new parents, and the adoption makes him

legally a stranger to the bloodline of his natural parents." *Crumpton v. Crumpton, supra,* 28 N.C. App. at 363, 221 S.E. 2d at 393. We agree fully with this conclusion.

General Statute 48-23 provides initially in subsection (1) that the adopted child "shall be entitled to inherit real and personal property by, through, and from the adoptive parents in accordance with the statutes relating to intestate succession." This much of G.S. 48-23 simply recognizes that which is provided for in G.S. 29-17 dealing with intestate succession by, through and from adopted children.[4] Contrary to respondent-appellants' contention, however, G.S. 48-23 deals with more than intestate succession, and, as its title indicates, addresses generally the legal effect of a final order of adoption. The statute provides in subsection (1) that the final order of adoption shall establish the relationship of parent and child between the adoptive parents and the child and that "[a]n adopted child shall have the same legal status, including all legal rights and obligations . . . as he would have had if he were born the legitimate child of the adoptive parent or parents . . . ." Subsection (2) provides that upon adoption the adopted child's natural parents are relieved of all legal duties and obligations due from them to the child and are divested of all rights with respect to the child. Subsection (3) provides that words such as "child," "grandchild," "heir," "issue" or "descendant" in

---

4. General Statute 29-17 in pertinent part provides:

"§ 29-17. *Succession by, through and from adopted children.* — (a) A child, adopted in accordance with Chapter 48 of the General Statutes or in accordance with the applicable law of any other jurisdiction, and the heirs of such child, are entitled by succession to any property by, through and from his adoptive parents and their heirs the same as if he were the natural legitimate child of the adoptive parents.

(b) An adopted child is not entitled by succession to any property, by, through, or from his natural parents or their heirs . . . .

(c) The adoptive parents and the heirs of the adoptive parents are entitled by succession to any property, by, through and from an adopted child the same as if the adopted child were the natural legitimate child of the adoptive parents.

(d) The natural parents and the heirs of the natural parents are not entitled by succession to any property, by, through or from an adopted child . . . ."

any deed, grant, will or other written instrument shall, in the absence of expression of a contrary intent therein, include adopted children.

We believe that in enacting G.S. 48-23 the legislature contemplated that upon a final order of adoption a complete substitution of families would take place with the adopted child becoming the child of his adoptive parents and a member of their family; likewise, the legal relationship with the child's natural parents and family would by virtue of the adoption order be completely severed. In *Headen v. Jackson*, 255 N.C. 157, 159, 120 S.E. 2d 598, 599-600 (1961), this Court, in discussing G.S. 48-23 which at that time consisted solely of subsection (1), quoted with approval *A Survey of Statutory Changes in North Carolina in 1955*, 33 N.C. L. Rev. 513, 522 (1954-55):

> "Here is a simple and clear rule which eliminates all doubt as to the standing and rights of an adopted child. For all legal purposes he is in the same position as if he had been born to his adoptive parents at the time of the adoption. . . . *Whatever the problem is concerning an adopted child, his standing and his legal rights can be measured by this clear test: 'What would his standing and his rights be if he had been born to his adoptive parents at the time of the adoption?'* " (Emphasis supplied.)

Further, G.S. 48-23(3) makes clear that the legislature intended this complete substitution of families and severance of the adopted child's legal ties with his natural parents to embrace not only intestate succession but also property passing under deeds, grants, wills or other written instruments.[5] That portion of G.S. 48-23 relevant to the present controversy provides:

> "From and after the entry of the final order of adoption, the words . . . 'issue' . . . in any deed . . . shall be held to include

---

5. In *Thomas v. Thomas*, 258 N.C. 590, 129 S.E. 2d 239 (1963), it was held that an adopted child did not take under a provision in a will to "children" absent an indication of a contrary intent clearly appearing in the will or in the attendant circumstances. It was noted that "courts in most jurisdictions still make a distinction between devises and inheritances with respect to the right of an adopted child, even though all distinctions between natural born and adopted children have been abolished by statute." *Id.* at 592, 129 S.E. 2d at 240. As noted, at the time *Thomas* was decided G.S. 48-23 consisted solely of subsection (1). Subsection (3), enacted almost immediately after *Thomas* was decided, changed the law as there declared.

any adopted person, unless the contrary plainly appears by
the terms thereof, whether such instrument was executed
before or after the entry of the final order of adoption and
whether such instrument was executed before or after the
enactment of this section."

We note also the statutory command that this construction of the
word "issue" be applied regardless of when the deed was ex-
ecuted.

With this understanding of the legislative intent we now ad-
dress the problem before us which, as noted by the Court of Ap-
peals, is one of first impression in this state. It is true as
respondent-appellants contend that the legislature has not
specifically provided that the word "issue" in any deed does not
include children adopted out of the grantor's family. However,
"[t]he primary rule of statutory construction is that the intent of
the legislature controls the interpretation of a statute. In seeking
to discover this intent, the courts should consider the language of
the statute, the spirit of the act, and what the act seeks to ac-
complish." *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188
S.E. 2d 281, 283 (1972). Further, "[m]atters necessarily implied by
the language of a statute must be given effect to the same extent
as matters specifically expressed." *Lutz v. Bd. of Ed.*, 282 N.C.
208, 220, 192 S.E. 2d 463, 471-72 (1972).

Given the legislative intent that the legal effect of a final
order of adoption shall be substitution of the adoptive in place of
the natural family and severance of legal ties with the child's
natural family, the implication is clear that the legislature intend-
ed that children adopted out of a family would, for *all* legal pur-
poses, no longer be a part of that family. We are convinced the
severance of legal ties with the child's natural family was not in-
tended to be partial. It is most unlikely that in enacting G.S. 48-23
the legislature intended the child would for some purposes remain
legally in its natural bloodline. Such a construction violates the
spirit of the act and thwarts that which the act seeks to ac-
complish.

Instead, we view G.S. 48-23 to mean that upon a final order
of adoption the severance of legal ties with the child's natural
family is total. The child acquires full status as a member of his

adoptive family and in so doing is for all legal purposes removed from his natural bloodline.

We conclude, then, that the clear implication of G.S. 48-23(3) as it applies to the present case is as follows: Upon entry of the final order of adoption the word "issue" in any deed does not include persons adopted out of the family unless a contrary intent plainly appears from the terms of the deed. Further, this construction of the word "issue" shall be applied regardless of whether the deed was executed before or after entry of the final order of adoption and regardless of whether it was executed before or after enactment of G.S. 48-23(3).

We are in full agreement with the holding of *Peele v. Finch*, 284 N.C. 375, 200 S.E. 2d 635 (1973), that G.S. 48-23(3) as applied to a will does not abolish the rule that the intent of the testator controls the construction of his will. We considered in *Peele* whether a devise to "issue" included an adopted child. We noted that "[u]nder the statute, such child takes unless a contrary intent plainly appears by the terms of the will or conveyance." We concluded that "[n]othing in the devise made by the [testator's will] . . . throws any light whatever upon his intent with reference to this matter . . . . [W]e are required by the statute to hold that the adopted child . . . is 'issue' . . . within the meaning of the will . . . ." *Id.* at 383, 200 S.E. 2d at 641.

So it is here. Respondent-appellants by virtue of their adoption out of the Crumpton family do not take as "issue" of Ruth Crumpton absent a contrary intent plainly appearing by the terms of the deed. The deed in question fails to evidence such a contrary intent. We hold, accordingly, that respondent-appellants do not share in the proceeds of the land conveyed to Ruth Crumpton.

## II

Respondent-appellants contend further that denial of their interest in the proceeds of the land conveyed to Ruth Crumpton deprives them of property without Due Process of Law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Law of the Land provision in Article I, § 19 of the North Carolina Constitution. We addressed this contention in our previous decision in this matter: "If appellants are ultimately denied an interest in this property . . . it is now settled

that such 'statutes destroying or diminishing *contingent interests* in property do not, *per se,* deprive the holder thereof of property without due process of law . . . or violate any other constitutional limitation upon legislative power. *Stanback v. Citizens National Bank,* 197 N.C. 292, 148 S.E. 313 (1929).' *Peele v. Finch,* 284 N.C. 375, 200 S.E. 2d 635 (1973)." (Emphasis original.) *Crumpton v. Crumpton, supra,* 290 N.C. at 653, 227 S.E. 2d at 590.

We still hold with our previous determination.

The decision of the trial court is

Affirmed.

Justice MEYER did not participate in the consideration and decision of this case.