S98A1664. MILLER v. WALKER et al.
(514 SE2d 22)

HINES, Justice.

This case involves the question of whether certain minor children remain beneficiaries of a trust created by their natural grandfather despite the children's adoptions by unrelated persons. We affirm the lower court's determination that the adopted children no longer hold interests in the trust.

In 1988, Beutell created a trust for the benefit of his daughter, N. J., and her descendants. Beutell died later that year, and the trust was funded with a $300,000 bequest from his will. At the times of creation of the trust and Beutell's death, N. J. was alive and had four living children: C. R., John Doe, Jane Doe I, and Jane Doe II.

Item Two of the trust instrument provides:

> The Trustee will take, manage, use, invest, and re-invest such sums of money as may be turned over to the Trustee by Grantor or by his Executor for the education, maintenance, and support of the daughter of Grantor, [N. J.], and the descendants of [N. J.], the Trustee being empowered to use the Trustee's absolute discretion as to the amounts of interest and principal to use or pay out for the said purposes. "Education" shall include college undergraduate as well as graduate education. "Maintenance and support" shall be limited to the accustomed style of living of the beneficiary unless the Trustee determines such to be inadequate. As to the named beneficiaries Grantor intends no priority and does not intend the Trustee to distribute income equally or

to conserve capital for unborn descendants.

Item Three states:

(a) This trust shall terminate at such time as when no then living child of [N. J.] is less than twenty-one (21) years of age. On such termination, what then remains in the Trust shall be paid out one-half (½) to [N. J.], if living, and the other one-half (½) shall be distributed to her descendants per stirpes. The encroachments for each beneficiary shall be added to the value of assets remaining with one-half to [N. J.] and the other one-half to [N. J.'s] descendants, per stirpes, deducting from the share of each encroachment made for that distributee.
(b) If [N. J.] dies before her youngest child is twenty-one (21) years of age, the Trust shall continue until such time as no then living child of [N. J.] is less than twenty-one (21) years of age, at which time the Trust shall terminate and all of the Trust assets shall be distributed per stirpes to the descendants of [N. J.].
(c) Should [N. J.] predecease the above event for distributions, and none of her children attain age twenty-one (21), the Trust shall terminate upon the last of [N. J.] and her children to die, and the Trust assets shall be distributed to [N. J.'s] descendants per stirpes, and if there are no such children or descendants surviving [N. J.], then the Trust assets shall be distributed equally to Grantor's sisters, [two named sisters].
(d) If the Trustee is unable to locate [N. J.] after three years from the date of the death of Grantor,[1] this Trust shall terminate and all of the assets in it shall be divided equally between Grantor's sisters, [two named sisters], and if either is deceased, to her descendants per stirpes.
(e) Insofar as the Trustee is reasonably able to prevent it under no circumstances shall any principal or income go to [N. J.'s] husband (past or present).

Several years after the trust was created and funded, N. J.'s parental rights to three of her children were terminated; Jane Doe I and Jane Doe II were adopted in 1992, and John Doe was adopted in

---

[1] The trust also states that the trustee is to use whatever funds the trustee reasonably thinks are necessary in order to locate and make contact with N. J., including the employment of professional tracers, and a decision on its part that it has been unable to locate N. J. is to be final and conclusive on all parties.

1996. Each of the adoptions occurred in a foreign state. The fourth child, C. R., lives with his natural father and has not been adopted. As a result of the Doe adoptions, the trustee, NationsBank, N.A. (South), petitioned the superior court to declare the rights of the children and any future descendants of N. J. under the trust, and to clarify whether the "equalization" provisions of paragraph (a) of Item Three of the trust apply to distributions upon all events of termination.

After filing of the trustee's petition, the superior court entered various orders to protect the confidentiality of the identities and locations of the adopted children. The court also appointed Miller as guardian ad litem for the adopted Doe children and Walker as guardian ad litem for C. R. and for N. J.'s unborn and unknown descendants. The parties entered into a stipulation of facts and the guardians filed cross-motions for summary judgment on the issue of the adopted children's interests in the trust. Miller also moved to dismiss the question of the construction of the trust "equalization" provisions, arguing that the issue was not ripe for decision; Walker did not oppose dismissal of the issue.

The superior court granted Walker's motion for summary judgment, citing OCGA § 19-8-19,[2] the present law providing for the effect of a decree of adoption, finding that the Doe children ceased to

---

[2] OCGA § 19-8-19 provides:

(a) A decree of adoption, whether issued by a court of this state or by a court of any other jurisdiction, shall have the following effect as to matters within the jurisdiction of or before a court in this state:

(1) Except with respect to a spouse of the petitioner and relatives of the spouse, a decree of adoption terminates all legal relationships between the adopted individual and his relatives, including his parent, so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship; and

(2) A decree of adoption creates the relationship of parent and child between each petitioner and the adopted individual, as if the adopted individual were a child of biological issue of that petitioner. The adopted individual shall enjoy every right and privilege of a biological child of that petitioner; shall be deemed a biological child of that petitioner, to inherit under the laws of descent and distribution in the absence of a will, and to take under the provisions of any instrument of testamentary gift, bequest, devise, or legacy, whether executed before or after the adoption is decreed, unless expressly excluded therefrom; shall take by inheritance from relatives of that petitioner; and shall also take as a "child" of that petitioner under a class gift made by the will of a third person.

(b) Notwithstanding the provisions of subsection (a) of this Code section, if a parent of a child dies without the relationship of parent and child having been previously terminated by court order or unrevoked surrender of parental rights to the child, the child's right of inheritance from or through the deceased parent shall not be affected by the adoption.

be N. J.'s descendants upon their adoptions and were no longer members of the class of beneficiaries of the trust. The court also dismissed consideration of the "equalization" issue, concluding it was not yet ripe for decision.[3]

Miller, as guardian for the Doe children, urges that the children's present interests and remainder interests in the trust vested at the trust's inception in 1988 before their adoptions occurred; that the children retained their interests after their adoptions because their interests were absolutely and indefeasibly fixed and determined; and that to interpret OCGA § 19-8-19 to divest such vested interests would result in an unconstitutional taking of property without due process of law in violation of the Fourteenth Amendment of the United States Constitution and Art. I, Sec. I, Pars. I and X of the 1983 Georgia Constitution. However, the arguments are unavailing.

The express provisions of OCGA § 19-8-19 make plain that the legislature intended that following adoption there be a complete substitution of families for the adopted individual. See *Ivey v. Ivey*, 264 Ga. 435, 437 (2) (445 SE2d 258) (1994). Consequently, in the case of adoption by unrelated persons, there is a termination of the adopted individual's legal ties with his natural parents, not only for the purpose of intestate succession but also with regard to the passing of property by virtue of written instruments, including wills and trusts. Other jurisdictions have considered and upheld such a complete statutory severance on the question of the adopted person's rights to property stemming from a class gift. See, e.g., *In re Will of Martell*, 457 S2d 1064 (Fla. App. 1984); *Crumpton v. Mitchell*, 281 SE2d 1 (N.C. 1981); *In re Estate of Russell*, 95 Cal. Rptr. 88 (Cal. App. 1971). As stated in *Matter of Estate of Best*, 485 NE2d 1010 (N.Y. 1985), "[p]owerful policy considerations militate against construing a class gift to include a child adopted out of the family. . . . Recognition of a right to inherit class gifts from biological kindred would be inconsistent with the child's complete assimilation into the adoptive family and thus contrary to legislative intent. . . ." Id. at 1012 [3]. Compare *Menard v. Fairchild*, 254 Ga. 275 (328 SE2d 721) (1985) and *Emory University v. Dorsey*, 207 Ga. App. 808 (429 SE2d 307) (1993), cases concerning the survival of statutory rights of action and benefits not involving class gifts nor contravening the policy considerations of the adoption laws. What is more, continuing financial ties between the adopted child and the biological family would necessitate some amount of contact; in a case such as this one, in which it has been determined that the children's new identities and whereabouts must not be disclosed, this contact could have serious consequences for the

---

[3] Construction of the "equalization" provisions is not at issue in this appeal.

welfare of the adopted children.[4]

Moreover, OCGA § 19-8-19 on its face is not vulnerable to the charge that it works a deprivation of property rights for it conveys upon the adopted individual full rights and privileges as a biological child of the petitioner. Nor is the statute successfully attacked as working an unconstitutional taking of property in this case. Even if the children's interests are considered to be vested, the statute clearly contemplates interests in existence prior to the decree of adoption. To read the statute otherwise ignores the express directive that the adopted individual becomes a "stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed."

But the argument that the statute operates here as an unconstitutional taking misses the mark because this case is not decided by an application of the statute. Ultimately, this case is resolved by the cardinal rule in construing a trust instrument, which is to discern the intent of the settlor and to effectuate that intent within the language used and within what the law will permit. *Perling v. C & S Nat. Bank*, 250 Ga. 674, 676 (1) (300 SE2d 649) (1983); *Thomas v. Trust Co. Bank*, 247 Ga. 693 (1) (279 SE2d 440) (1981). In construing the settlor's intent with regard to the rights of an adopted child to take under the trust instrument, it is not a question of the right or equity of the adopted child to a share but simply a question of the settlor's intent with respect to those who are to benefit. And in order to effectuate that intent, the settlor is charged with knowledge of the adoption laws in effect at the time of execution of the trust, and such laws should determine the class of beneficiaries entitled to take, in the absence of an express contrary intent. See *Thomas* at 693 (1).

Former OCGA § 19-8-14, in effect at the times of execution of the trust and the settlor's death in 1988, contained provisions similar to present OCGA § 19-8-19, severing all former familial relationships of the adopted child.[5] Moreover, the settlor chose not to name his then

---

[4] In petitioning the superior court for confidentiality, NationsBank's counsel averred by affidavit that there were indications of child abuse by the natural mother, N. J.

[5] Former OCGA § 19-8-14 provided in relevant part:
A decree of adoption, whether issued by a court of this state or by a court of any other jurisdiction, shall have the following effect as to matters within the jurisdiction of or before a court in this state: (1) Except with respect to a spouse of the petitioner and relatives of the spouse, a decree of adoption relieves the natural parent(s) of the adopted individual of all parental rights and responsibilities and terminates all legal relationships between the adopted individual and his relatives, including his natural parent(s), so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individ-

living grandchildren as beneficiaries, but instead to benefit a class designated as descendants. The trust as a whole, including the provision that no interest go to a spouse, further evidences the settlor's desire that the trust benefit only those who are actual members of his family. Thus, it can be concluded that the settlor did not intend N. J.'s descendants, as beneficiaries of both the present and remainder interests in the trust, to include children adopted out of the settlor's family. Accordingly, the ruling that the Doe children are no longer beneficiaries of the trust stands.

*Judgment affirmed. Benham, C. J., Thompson, J., and Judge S. Lark Ingram concur. Fletcher, P. J., Sears and Hunstein, JJ., dissent. Carley, J., disqualified.*

FLETCHER, Presiding Justice, dissenting.

Settlor Joe Marion Beutell, Jr., created an inter vivos trust in 1988 for the immediate benefit of his daughter and her children. He died later that year, and the trust was funded with a $300,000 bequest in his will. At the time, his daughter had four living children. The issue in this case is whether the grandchildren's rights as beneficiaries under the trust terminated when they were adopted outside the family *after* the trust was created and funded. Because the minor children's rights under their grandfather's trust vested in 1988, their subsequent adoption outside the family did not divest them of these vested interests. Therefore, I dissent.

Both the trust instrument's language and case law support the conclusion that the four children obtained vested interests in 1988 that did not divest upon their adoption. Item two of the trust agreement gives the trustee broad discretion to use both the principal and interest "for the education, maintenance, and support of the daughter of Grantor, NANCY JEAN BEUTELL HALL, and the descendants of NANCY JEAN." The instrument makes clear that the settlor recognized that there was more than one beneficiary of the trust, despite explicitly naming only his daughter. Item two concludes: "As to the named beneficiaries Grantor intends no priority and does not intend the Trustee to distribute income equally or to conserve capital for unborn descendants." Item three provides further support that the settlor intended for his grandchildren to receive immediate distributions from the trust for their education, maintenance, and support. On termination of the trust, the trustee was directed to deduct each beneficiary's encroachments on the principal before distributing the remains of the trust.

Thus, there is no support for the majority opinion's conclusion

---

ual by name or by some designation not based on a parent and child or blood relationship.

that the settlor intended to divest his grandchildren of their rights when adopted outside the family. The settlor indicated his intent for the trustee to pay for the maintenance and support of Nancy Jean's living descendants as soon as the trust was funded. He never directed that their rights to the trust's principal and income would terminate upon their adoption outside the family. And, contrary to the majority's assertion, we cannot rely on the rule that a settlor is presumed to know the adoption law to divest children of existing rights. Neither *Thomas v. Trust Company Bank*[6] nor any of its progenitors have applied that rule to extinguish rights that vested when the trust became operative; instead, they refer to the adoption statute or other types of statutes in effect when the trust was executed to define the class of beneficiaries who benefit when their rights finally vest. Here it is not necessary to refer to the adoption law to determine the class of beneficiaries because none of the children had been adopted when the trust became operative. Further, the directive that the trustee should try to prevent any principal or income from going to Nancy Jean's past or present husband simply indicates the settlor's intent towards his daughter's spouse; it does not negate the evidence that the settlor intended the trust to immediately benefit Nancy Jean and her living children.

Not only does the majority misconstrue the settlor's intent, but it also wrongly applies the state's adoption statute to divest the adopted grandchildren of rights that vested before their adoption. OCGA § 19-8-19 provides that an adoption decree makes the adopted individual a stranger to his former relatives "for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed." Despite the majority's interpretation, this provision does not sever all of the adopted person's property rights stemming from a class gift, but only those property interests that have not vested.[7] None of the foreign cases that the majority cites involves children with a vested interest.[8] In contrast, the children in this case

---

[6] 247 Ga. 693 (279 SE2d 440) (1981).

[7] See *Menard v. Fairchild*, 254 Ga. 275, 276 (328 SE2d 721) (1985) (holding that child's adoption after his birth father's death did not diminish his vested right to recover workers' compensation); *Emory University v. Dorsey*, 207 Ga. App. 808, 808-809 (429 SE2d 307) (1993) (holding that adoption of child after death of birth mother did not terminate adopted child's right to bring a wrongful death action).

[8] See *In re Estate of Russell*, 95 Cal. Rptr. 88 (Cal. App. 1971) (excluding child born after testator's death based on term of will that "child," "issue," and "descendant" did not include children legally adopted after testator's death); *In re Will of Martell*, 457 So. 2d 1064 (Fla. App. 1984) (finding adopted individual had no vested right in testamentary trust when his expectancy at time of his adoption depended on him surviving his natural grandfather and mother); *In re Estate of Best*, 485 N.E.2d 1010 (N.Y. 1985) (excluding child born and adopted more than 20 years before the trust was created); *Crumpton v. Mitchell*, 281 S.E.2d 1 (N.C.

had a vested right — a right to immediate possession of the property — for at least four years before their adoption.[9]

By its opinion, the majority ignores that from the time the trust was created and funded in 1988 these children had a present right to both income and corpus for their education, maintenance, and support. While the trustee had broad discretion as to the amounts to pay out for these purposes, this discretion did not diminish the children's present vested rights. The only uncertainty was the amounts to be used for these purposes, as a trustee cannot defeat the purposes of the trust by refusing to exercise discretion.[10] And a court of equity may control discretion when the trustee fails to act or arbitrarily declines to exercise discretion.[11]

The relative limited funding for the trust means it could be consumed before the termination provisions of item three come into play. This conclusion is supported by the language in item two that the settlor did not intend any priority among the beneficiaries and did not want the trustee to distribute the income equally or to conserve the capital for the unborn. Under these facts, the issue of vested rights should focus on the present possessory right rather than on any possible remainder created by item three, as the majority opinion does.

Nevertheless, a review of the children's remainder rights as created by item three shows that they also vested when the trust became operative in 1988. Remainders are either vested or contingent. A contingent remainder is subject to a condition precedent; that is, a certain event must occur before either the right to take or the person or persons entitled to take is determined. All other remainders are vested, absolutely vested if no conditions are attached, and, if they have a condition subsequent, they are vested subject to divestment, either partially or totally.[12] The law favors the early vesting of remainder interests and vesting of remainders in all cases of doubt.[13]

Here, the class of Nancy Jean's living descendants not only takes a present interest in the trust's principal and income for its education and support, her descendants also have a fixed and absolute right to the future enjoyment of the property. Their share of the trust may be

---

1981) (holding no violation of due process when adopted children denied a contingent interest in property).

[9] See *Walters v. Suarez*, 188 Ga. 190, 194 (3 SE2d 575) (1939) (construing the remainder as vested based on the testator's language that his executors could advance to his children a part of his estate to be charged to the beneficiary's interest and to be accounted for in the final division of the estate).

[10] *Prince v. Barrow*, 120 Ga. 810 (48 SE 412) (1904).

[11] *C & S Nat'l Bank v. Haskins*, 254 Ga. 131, 141-142 (327 SE2d 192) (1985).

[12] See William H. Agnor, Future Interests: The Law in Georgia § 1.5 (1979).

[13] See OCGA § 44-6-66.

diminished should Nancy Jean have additional children, but the birth of additional descendants would not divest them of their vested remainder rights.[14] Under the trust instrument, the rights of the beneficiaries were subject to being divested only if the individual died before the trust terminated as provided in item three. Contrary to the majority opinion's conclusion, neither event would change the interests of Beutell's grandchildren from a vested right into a contingent one.[15] "It is not the uncertainty of enjoyment in the future, but the uncertainty of the right of enjoyment, which makes the difference between a 'vested' and a 'contingent' interest."[16]

In conclusion, the adoptions in 1992 and 1996 did not divest the adopted individuals of their vested rights as beneficiaries of their grandfather's trust. In 1988, they acquired vested rights to both a present interest in the trust's income and corpus and a remainder interest in the trust's funds when the trust terminated. Since the majority opinion ignores the settlor's intent not to distinguish among his four grandchildren and harms the law on vested interests under wills and trusts, I dissent.

I am authorized to state that Justice Sears and Justice Hunstein join in this dissent.

DECIDED MARCH 8, 1999 —
RECONSIDERATION DENIED APRIL 2, 1999.

*Lefkoff, Duncan, Miller, Grimes & Miller, Joseph Lefkoff, Donna G. Barwick, James W. Beverage, Nancy Wiggins-Lester,* for appellant.

*Lefkoff, Duncan, Miller, Grimes & Miller, Joseph C. Miller,* pro se.

*Kilpatrick Stockton, A. Kimbrough Davis, J. David Hopkins III, Salo & Walker, Ann D. Salo,* for appellees.

*Salo & Walker, Melissa P. Walker,* pro se.

---

[14] See *Lanier v. Lanier*, 218 Ga. 137, 142 (126 SE2d 776) (1962); OCGA § 44-6-65.

[15] See id. at 142-144 (holding testamentary trust created vested interest in son's then-living children, subject to being opened for later-born children and subject to divestment if the children did not survive their father); *Britt v. Fincher*, 202 Ga. 661, 662-664 (44 SE2d 372) (1947) (describing three classes of vested remainders including remainders to a class "that is subject to open and take in additional remaindermen after the time the estate becomes vested" and vested remainders "subject to be thereafter divested upon the happening of a contingent event"); Restatement of Property § 157 cmt. c (1936).

[16] Black's Law Dictionary 1402 (5th ed. 1979).