Richmond

## HELEN B. HOFFMAN, ET AL.

v.

## FIRST VIRGINIA BANK OF TIDEWATER

February 29, 1980.

Record No. 780549.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

*Richard B. Spindle, III (James C. Howell; Edward S. Stein; Willcox, Savage, Lawrence, Dickson & Spindle, P.C.,* on briefs), for appellants.

*Robert R. MacMillan (S. Miles Dumville; Breeden, Howard & MacMillan,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the principal question is whether a testator, in providing for a testamentary marital trust, waived the "prudent man rule" otherwise applicable in the investment of trust assets.

Helen B. Hoffman, formerly Helen C. Ballard, and other beneficiaries under the will of William P. Ballard, deceased, (collectively, the complainants, or the beneficiaries), filed their amended bill of complaint in the trial court against First Virginia Bank of Tidewater, successor to Southern Bank of Norfolk (the Trustee), serving as trustee of the marital trust established by the will for the benefit of Helen C. Ballard during her lifetime. Complainants sought to remove the Trustee and to surcharge its accounts. Copies of the will and inventory of the estate were attached to the bill of complaint as exhibits.

Complainants alleged that the marital trust comprised assets having a total value of $103,972.33, as of August 15, 1972, the date of its establishment; that various securities in the trust were sold between December 7, 1972, and January 4, 1973, and the sum of $39,575.88, being substantially all the proceeds derived therefrom and approximating 38% of the total trust assets, was invested in the securities of three real estate investment trusts (REITs); that from January, 1973 until September, 1973 the securities of all REITs declined in value; that about September, 1973 prices for REIT securities "plummeted" and by the end of that year the market for such securities had "substantially collapsed"; and that the REIT securities held by the Trustee became "substantially worthless".

Complainants alleged that First Virginia negligently failed to observe reasonable standards for prudent fiduciary investment for a trust of modest size, by failing to diversify the trust investments, by investing in speculative securities unsuitable for the trust, by failing to maintain adequate surveillance of the investments, by failing to apply available investment information and advice, and by failing to render timely accountings to the beneficiaries. The amended bill of complaint contained no allegation of fraud, bad faith, or conflict of interest on the part of the Trustee.

Complainants sought to replace First Virginia as trustee with two specified individuals as substitute trustees. Complainants also sought to surcharge First Virginia for all fees and commissions taken or accrued, and the sum of $39,575.88, with 8% interest, cost and attorney's fees, subject to credit against principal for the value of the REIT investments and to credit against interest for interest and dividends received from such investments.

First Virginia filed a demurrer on the ground that the allegations in the amended bill of complaint that the Trustee failed to diversify

investments and was liable for "mere negligence" in managing the trust did not state a cause of action for which relief could be granted. The chancellor, being of opinion that the Ballard will relieved the Trustee "from liability for mere errors of judgment or negligence" and specifically relieved it of the duty to diversify investments, sustained the demurrer and dismissed the cause by final decree entered on January 31, 1978. The decree did not refer to complainants' request for removal of the Trustee and appointment of substitute trustees, or to the allegation of failure to render timely accountings, and the complainants did not specifically object to these omissions.

On appeal, the beneficiaries have concentrated their attack upon the chancellor's rationale for sustaining the Trustee's demurrer. Accordingly, we must determine whether, as the chancellor ruled, the investment authority granted by the Ballard will insulated the Trustee from liability for its alleged negligence.

The relevant powers and duties of the Trustee* are set forth as follows in Article V of the Ballard will:

\* \* \*

"The Executrix and Executor, during the period of administration, and my Trustees during the period of any trust created by this my Will, shall have power, authority and discretion to take possession of, hold, manage and control all of the property and estate to which I may be seised and possessed at the time of my death, be the same real, personal or mixed and wheresoever situate, with full discretionary powers of management, including the power of sale or resale of investments and reinvestments, both real and personal, *without being restricted to those investments authorized by statute in Virginia for the investment of trust funds,* and each is specifically authorized to retain any investments made by me during my lifetime or to dispose of same as they may deem advisable. (Emphasis added.)

"The Executrix and Executor, during the period of administration, and the Trustees throughout the period of any trust created by this my Will shall have authority to keep the corpus invested until it is finally delivered and distributed, including the *authority to retain investments in the same form in which such fiduciaries*

---

\* In his will, as first executed in 1958, the testator nominated his wife, Helen C. Ballard (now Helen B. Hoffman), and his brother, James A. Ballard, as Executors and Trustees, but by codicil he replaced them with Southern Bank of Norfolk as Executor and Trustee, and vested in the corporate fiduciary all authority previously granted in the will to the individual fiduciaries.

*shall receive the same unless and until in the judgment of such fiduciaries it is wise and expedient to dispose of same, but without liability on the part of any fiduciary* for depreciation in the value of the securities retained in accordance with this authorization; . . ." (Emphasis added.)

\* \* \*

"My Trustees herein named shall have full power and authority to hold or to invest all or any part of the corpus and the accumulations of any of the trusts herein provided in *any type of real or personal property, tangible or intangible, regardless of diversification or State laws, and to hold* and invest in common stocks, unimproved real estate, nonproductive items, common trust funds, investment company shares; to hold cash uninvested or in savings accounts. They shall have full power to register securities or other properties in their own names or in the name of a nominee and to vote stock in person or by proxy; to exchange securities, to buy and exchange real estate and to borrow money on same, securing same by deed of trust or otherwise; to execute options and take advantage of any rights to buy property, real or personal, and to subscribe to additional securities; to pay all necessary assessments or other expenses for the protection of buildings or other property; to employ attorneys; investment counsel, and other agents and pay their fees and charges from principal or from income; and to do all things necessary and desirable in looking after the trust estate.

"My Trustees or any successor trustee acting hereunder, in addition to and not in limitation of the powers hereinbefore set forth and those conferred by law, shall have the following additional powers:

\* \* \*

"(c) To extend the time of payment of any obligation at any time held hereunder; to compromise debts due by or to them; *to retain as long as they shall consider wise any of the investments or other property;* to grant options for the sale or exchange of such property. (Emphasis added.)

"(d) To invest and reinvest any funds held in any of the trusts including, but without being limited to accumulations of net income for the beneficiaries hereunder; to organize one or more corporations in such form and with such capital as they may deem advisable, and to transfer to such corporation or corporations money, real estate, securities or personal property.

"The Trustees shall maintain proper books of account of the activities of the Trustees under each trust created by this my Will and shall make report to all beneficiaries and their legal representatives at least once annually of the condition of all trusts then in existence."

■ Under Code §§ 26-40 and 26-40.1, trustees and other fiduciaries are permitted to invest assets entrusted to them in securities listed therein and designated as "lawful investments". But the General Assembly has also broadened the investment authority of fiduciaries and defined the applicable standard of care by incorporating into statute what is commonly referred to as the "prudent man rule" for the investment of fiduciary funds. Code § 26-45.1 provides in pertinent part as follows:

"(a) Except with respect to the securities described in §§ 6-184 [now repealed] and 26-40, in acquiring, investing, reinvesting, exchanging, retaining, selling and managing property for the benefit of another, an executor, administrator, trustee or other fiduciary, both individual and corporate, shall exercise the judgment of care under the circumstances then prevailing, which men of prudence, discretion and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to the permanent disposition of their funds, considering the probable income as well as the probable safety of their capital. Within the limitations of the foregoing standard, an executor, administrator, trustee or other fiduciary, both individual and corporate, is authorized to acquire and retain every kind of property, real, personal or mixed, and every kind of investment, specifically including but not by way of limitation, debentures and other corporate obligations and stocks, preferred or common, and securities of any open-end or closed-end management type investment company or investment trust registered under the Federal Investment Company Act of 1940, as from time to time amended, which men of prudence, discretion and intelligence acquire or retain for their own account; and within the limitations of the foregoing standard, an executor, administrator, trustee or other fiduciary, both individual and corporate, may retain property properly acquired, without limitation as to time and without regard to its suitability for original purchase. Also, within the limitations of the foregoing standard, a corporate executor, administrator, trustee or other corporate fiduciary is

authorized to retain as received its own stock or securities or the stock or securities of a corporation owning eighty per centum or more of its common stock, or any stock or securities received in exchange for any such investments.

"(b) Nothing contained in this section shall be construed as authorizing any departure from, or variation of, the express terms or limitations set forth in any will, agreement, court order or other instrument creating or defining an executor's, administrator's, trustee's or other fiduciary's duties and powers, but the terms "legal investment" or "authorized investment" or words of similar import, as used in any such instrument, shall be taken to mean any investment which is permitted by the terms of paragraph (a) hereof."

*   *   *

This statute, first enacted in 1956 (Acts 1956, c. 660), merely incorporated the principle long established by our case law that, unless a trust instrument provides otherwise, the "prudent man rule" will be applied to the management of assets by a fiduciary. Thus, the rule applied in the following cases: *Commercial, Etc., Bank* v. *Burton,* 183 Va. 133, 31 S.E.2d 289 (1944), where no express trust powers were stated in the will; *Parsons* v. *Wysor,* 180 Va. 84, 21 S.E.2d 753 (1942), where the funds were required to be managed in accordance with laws for the investment of trust assets; *Buckle* v. *Marshall,* 176 Va. 139, 143, 10 S.E.2d 506, 507 (1940), where the trust instrument required "special care" to avoid speculation; *Powers* v. *Powers,* 174 Va. 164, 3 S.E.2d 162 (1939), where there was no trust instrument; and *Harris* v. *Citizens Bank,* 172 Va. 111, 200 S.E. 652 (1939), where no express trust powers were stated in the will.

The standard of ordinary care was also held to apply in *Koteen* v. *Bickers,* 163 Va. 676, 177 S.E. 904 (1934), upon which the beneficiaries strongly rely. In that case, however, there was no provision that the "prudent man rule" should not apply; there was an exoneration provision exempting the trustee from liability except for "wilful default", 163 Va. at 687, 177 S.E. at 908. Therefore, while the trustee was required to exercise ordinary care in investing trust funds, his failure to do so, absent wilful default, would impose no liability upon him. *Koteen* is consistent with the other cases in which the "prudent man rule" has been applied.

■ The beneficiaries acknowledge that a testator may waive the "prudent man rule", but they say that Ballard did not do so. Although there was no express waiver, a waiver may arise by necessary implica-

tion from the language used in the will. Therefore, we review the powers granted to the testamentary trustee by the will.

In Article V, the testator gave his executor and trustee "full discretionary powers of management . . . without being restricted to those investments authorized by statute in Virginia for the investment of trust funds . . . ." This provision authorized the fiduciary to invest in assets other than those specifically listed in Code §§ 26-40 and 26-40.1.

The testator was especially interested in giving his executor and trustee power to retain any or all of his investments, and he exonerated the fiduciary, acting in either capacity, from liability for depreciation in the value of securities so retained. This provision was important to afford flexibility in protecting the testator's interests in the closely-held, family corporations listed in the inventory of his estate.

The powers of the trustee alone were then stated. The will authorized investment "in any type of real or personal property . . . regardless of diversification or State laws, and . . . in common stocks, unimproved real estate, non-productive items, common trust funds, investment company shares . . . ." This language, the Trustee maintains, gave it the broadest possible investment authority and waived the application of the "prudent man rule". We agree.

Having already provided that the executor and trustee could invest without being restricted to the list of legal investments under Code §§ 26-40 and 26-40.1, the testator clearly intended to grant more comprehensive powers to the trustee alone. Accordingly, he specifically waived any requirement of diversification of investments, and then removed any further restrictions upon the trustee's investment powers by eliminating the constraints of laws otherwise applicable. We cannot agree with the contention of the beneficiaries that the testator intended by these provisions only to reaffirm his waiver of the "legal list" of investments set forth in Code §§ 26-40 and 26-40.1. The terminology is too broad to be construed as applying to a single investment law, embraced within the two statutes, that had already been eliminated. The language is clear and unambiguous, so that no extrinsic evidence is admissible to explain its meaning. *Gasque* v. *Sitterding,* 208 Va. 206, 211, 156 S.E.2d 576, 580 (1967); *cf. Burton* v. *Irwin,* 212 Va. 104, 181 S.E.2d 624 (1971). We conclude that the testator's language must be construed as a waiver of the "prudent man rule" that had been incorporated into the statute law of the Commonwealth.

As the Trustee was authorized to invest in any kind of real or personal property, it could purchase securities of REITS. As the

Trustee was not required to diversify, it could purchase as many of these securities as it deemed advisable. As the Trustee was expressly authorized to retain investments as long as it deemed advisable, it was under no obligation to sell in a declining market. A prudent man might not have invested in REIT securities, or might have diversified the investments to a greater extent, or might have sold the REITS before their market value deteriorated, but the Trustee was acting pursuant to the expanded authority granted to it by the testator.

■ The broad investment powers were first conferred upon the testator's wife and brother, but later were transferred without diminution to the bank of which he was a stockholder and director. It is apparent that, in view of his close association with each of the fiduciaries named in his will and in his codicil, the testator was content to grant to them the widest possible discretionary powers in the administration of his estate. In order to impose liability, therefore, it must be alleged and proved that the fiduciary acted dishonestly or in bad faith, or abused the discretion vested in it. *Rinker's Adm'r* v. *Simpson*, 159 Va. 612, 621-622, 166 S.E. 546, 549-50 (1932); *Trout* v. *Pratt*, 106 Va. 431, 444, 56 S.E. 165, 168 (1907); *Dillard* v. *Dillard*, 97 Va. 434, 442, 34 S.E. 60, 63 (1899).

The beneficiaries have not alleged fraud, dishonesty, or bad faith. In oral argument, they contended that the Trustee abused its discretion by failing to diversify. But the testator expressly authorized the Trustee not to diversify, so there was no abuse of discretion in following this authorization.

The beneficiaries insisted that the Trustee had no discretion to invest in speculative securities. However, the will authorized, without restriction, investment in any kind of security, and the express authorization to invest in nonproductive items and unimproved real estate shows an intent to permit the fiduciary in its discretion to invest in speculations. If the fiduciary did so invest, therefore, it did so pursuant to the terms of the will.

The beneficiaries argued that the Trustee negligently failed to maintain surveillance over the REIT securities and as a consequence failed to sell them when their value was declining. This was not an allegation of abuse of discretion but of negligence. But the Trustee was expressly authorized to retain, as long as it deemed advisable, any investment. We construe this authorization as sufficient to permit the Trustee to determine in its discretion the nature and extent of the surveillance required in managing the securities in its custody. A prudent man might have exercised sounder judgment in acquiring and reviewing

the securities in the trust account, but the testator chose to rely solely upon the judgment of his fiduciary.

We conclude that the chancellor did not err in sustaining the demurrer as to the Trustee's management of the investments. The additional issues of replacement of the Trustee and its alleged failure to submit timely accountings were not pressed for decision in the trial court and we will not consider them for the first time on appeal. Rule 5:21. However, the adult beneficiaries have the right under the will at any time to file a petition in the trial court and have the Trustee replaced. This remedy was sought in the trial court on the basis of the alleged mismanagement of the trust by the Trustee and not pursuant to the express provision in the will. The remedy is always available, as the Trustee acknowledged, regardless of fault on its part; the beneficiaries need not allege or prove fault. Accordingly, we will affirm the judgment of the trial court without prejudice to the rights of the beneficiaries to proceed in the trial court pursuant to the provision of the will to replace the Trustee if they be so advised.

*Affirmed.*