## 35789. KENNEDY v. BRAND BANKING COMPANY.

NICHOLS, Justice.

The court granted certiorari to review the decision of the Court of Appeals in *Kennedy v. Brand Banking Co.,* 152 Ga. App. 47 (262 SE2d 177) (1979).

On February 19, 1974, Kennedy and three other individuals borrowed $50,000 each from the Brand Banking Company at 8% annual interest. Kennedy's loan was made in connection with his personal business as a real estate investor. Kennedy offered his ownership of one-quarter undivided interest in 78 acres of land as

collateral. This loan was renewed several times during the next three years at interest rates of 11% or 12%. The final note was executed on April 14, 1977, for a principal amount of $40,000 with a 10% annual interest rate. When Kennedy defaulted on this final renewal note, the bank notified him that it was declaring the entire balance due. The bank then sued to recover $38,500 in principal, $3,588.95 in interest, all future interest accruing at the rate of $11.08 per day, and 10% attorney fees. The bank also sought a special lien against Kennedy's real estate interest. The trial court granted summary judgment for the bank. On appeal, the Court of Appeals held that the bank could recover the principal amount due, receive the attorney fees, and obtain the lien on the real property. However, no award of interest could be made to the bank, nor could the payment of 10% attorney fees be based upon this non-recoverable interest.

1. Kennedy contends that the Court of Appeals erred in applying federal rather than state law in determining that he could not offset the principal amount he owed by the amount of his prior payments of usurious interest. See Code Ann. § 57-112, *C. & S. South DeKalb Bank v. Watkins,* 236 Ga. 759 (225 SE2d 266) (1976). Under state law, Code Ann. § 57-101.1 (Ga. L. 1970, p. 174), 9% per annum was the maximum interest rate which could be charged on loans secured by real estate. But, in 1974 Congress enacted Public Law 93-501, § 202, 88 Stat. 1558, known as the "Brock Bill." This bill, *inter alia,* amended the Federal Deposit Insurance Act, 12 USCA §§ 1811-1832, and specifically provided that an interest rate of 5% in excess of the discount rate on ninety day commercial paper as set by the Federal Reserve Bank may be charged by a federally-insured state bank on any business or agricultural loan of $25,000 or more. Public Law 93-501 preempted any contrary provisions in a state's constitution or statutes. 12 USCA § 1831a(a). In ruling against Kennedy, the Court of Appeals followed its decision in *Green v. Decatur Federal Savings &c. Assn.,* 143 Ga. App. 368 (238 SE2d 740) (1977), holding that federal law applied to these types of loans, and that it was not repealed by the amendments to Code Ann. § 57-101 (Ga. L. 1975, p. 370) and Code Ann. § 57-101.1 (Ga. L.

1975, p. 153). Kennedy contends that these amendments effectively repealed the federal legislation. We disagree.

The purpose of Public Law 93-501 was to alleviate the financial constraints affecting banks and other financial institutions due to the high interest rates the banks had to pay for money they used, while at the same time, they were prohibited by state usury laws from earning interest at competitive rates on the loans they made. S. Rep. No. 93-1120, 93d Cong. 2d Sess., —*reprinted in* [1974] U.S. Code Cong. and Ad. News 6249. This problem was particularly acute in those states which did not exempt business borrowers from usury laws. In those states which provided no exemption, "commercial lending (was) coming to a virtual halt and hardest hit (would have been) the construction, agricultural, and small business firms who (were) unable to borrow funds locally. . ." 120 Cong. Rec. 30624 (1974).

Although Georgia law did provide an exemption for corporations from the 9% usury limit (Code Ann. § 57-118), there was no exemption for loans to individuals for business or agricultural purposes. Thus, to a great extent the same adverse financial consequences due to high interest rates as described above applied to non-corporate borrowers in this state during 1974. (Note: Code Ann. § 57-118 was amended in 1979 to provide that loans to any corporations "or any persons . . . for nonconsumer purposes," may be for a rate of interest agreed to by the parties notwithstanding the applicable usury limit. Under the statute, the term "persons" includes "individuals, firms, partnerships, cooperatives, joint ventures, associations, companies, agencies, syndicates, estates, trusts, business trusts, receivers, fiduciaries, or other groups. . .")

Considering this background and the detrimental financial consequences that would have resulted if the state's lending institutions were required to limit their interest rate on business or agricultural loans to the usury ceiling of 8% or 9% (Code Ann. §§ 57-101 and 57-101.1), we conclude that the amendments to these Code sections were not intended to supersede the floating interest rates permitted by Public Law 93-501. The 1975 amendment to Code Ann. § 57-101.1 (Ga. L. 1975, p. 153) only added

subsection "e"; a provision stating that intangible recording taxes should not be considered interest. Clearly, this amendment was not intended to have any effect upon the interest rates permitted under federal law. The second amendment relied on by Kennedy to Code Ann. § 57-101 (Ga. L. 1975, p. 370) raised the maximum interest rate from 8% to 9%. Obviously, this change was made to provide financial institutions with a higher interest rate on those loans which did not already fall within the higher interest rate provisions of other Code sections such as Code Ann. §§ 57-101.1 or 57-118. No mention of Public Law 93-501 was made in this 1975 amendment. At a time when money was unavailable due to high interest rates and state usury limits, it is inconceivable that the legislature would enact a higher usury limit and contemporaneously intend to supersede the federal law which served to make funds available for local business or agricultural purposes. Therefore, we conclude, as did the Court of Appeals, that neither of these amendments had the result of terminating the effect of Public Law 93-501. Kennedy's loan of April 14, 1977, falls within the ambit of Public Law 93-501. His remedy for payment of usurious interest was to bring a claim under 12 USCA § 1831a(b). He did not do so, and he cannot now recover any penalty under the federal statute from the Brand Banking Company because of the two-year statute of limitations.

2. Kennedy contends that the Court of Appeals erred in awarding 10% attorney fees to the bank based on that court's interpretation of the loan agreement. The applicable portion of the printed loan form states as follows: "I hereby authorize said Bank, . . . to sell [the security] without notice at public or private sale, . . . in case of the nonpayment of said Note when due, applying the net proceeds to the payment of this Note. . . In case of *deficiency,* I promise to pay to said Bank the amount *thereof,* with legal interest, forthwith after such sale, *or if collected by an attorney at law ten percent thereof as fees.* " (Emphasis supplied.)

Kennedy argues that the last phrase of the last sentence only applies if there is a deficiency after foreclosure which is collected by an attorney. On the other

hand, the bank argues that it intended to provide for the payment of 10% attorney fees in all cases where the amounts owed are collected by an attorney; that is, the attorney fee provision would apply when a deficiency judgment is collected or when the entire outstanding balance of the note is collected.

The loan agreement is a pre-printed form including the bank's name and location. The above-quoted provision is the only reference to the procedure to be followed in the event of non-payment. Although other methods besides foreclosure and sale of the security may be utilized to recover the amount owed (*Trust Invest. &c. Co. v. First Ga. Bank,* 238 Ga. 309 (232 SE2d 828) (1977)), a specific provision in the note clearly states the agreement of the parties relative to attorney fees. It states that attorney fees are payable "in case of deficiency," if such deficiency is collected by an attorney. It is true that the parties could have made some other arrangement for attorney fees pursuant to Code Ann. § 20-506. They could have agreed that "[i]f payment of this note. . .shall not be made at maturity, and *any action* is brought to enforce collection thereof, the undersigned agrees to pay [10%] as attorney's fees in such action." 3 AmJur 635, Legal Forms 2d, § 41:41. (Emphasis supplied.) However, the agreement these parties made only provides for attorney fees if it is necessary for an attorney to collect the deficiency.

Even if we assume, as the Court of Appeals did, that the contract is ambiguous, only one rule of interpretation need be applied. See *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299 (99 SE2d 95) (1957). It is well settled that "[w]here construction of a contract is doubtful, it is to be construed most strongly against the party who prepared it." *Baker Mtg. Corp. v. Hugenberg,* 145 Ga. App. 528 (244 SE2d 56) (1978). Here, the bank's use of the printed form requires that the contract be construed against them. *Redman Development Corp. v. Piedmont Heating &c., Inc.,* 128 Ga. App. 447 (197 SE2d 167) (1973); *General Acceptance Corp. v. Guintini,* 115 Ga. App. 723 (155 SE2d 722) (1967); 6 EGL 110, Contracts, § 70. Thus, in construing the contract, this court will not rewrite it. Any ambiguity is to be resolved in favor of Kennedy. We reverse the decision of the Court of Appeals on this point.

There is no provision in the contract for attorney fees unless a deficiency is collected by an attorney.

3. In view of the opinion in Division 2, there is no need to address Kennedy's third contention that the bank failed to properly notify him of the "amounts due" as required by Code Ann. § 20-506. See *General Electric Credit Corp. of Ga. v. Brooks,* 242 Ga. 109 (249 SE2d 596) (1978).

*The decision of the Court of Appeals is affirmed except for the award of attorney fees. All the Justices concur.*

ARGUED FEBRUARY 12, 1980 — DECIDED MARCH 18, 1980.

*J. C. Rary,* for appellant.
*C. Wilson Dubose,* for appellee.

