39179. PERLING et al. v. CITIZENS & SOUTHERN
NATIONAL BANK et al.
39180. GOLDEN v. PERLING et al.

CLARKE, Justice.

The central issue in these appeals is the standard of care the law demands of trustees and whether the language of the trust instruments executed between these parties is sufficient to waive the required standard.

There are four trust instruments in this case. The language in each is identical except for the named beneficiaries. Each was established in 1971 by Sam Perling, as donor, for the benefit of one of his daughters with appellees Citizens and Southern National Bank (hereinafter C & S) and Golden as co-trustees. The trust agreements are irrevocable but Perling retained the right to replace the trustees at anytime.

Virtually the entire corpus of each trust was composed of 30,000 shares of stock in United States Industries, Inc., (USI). At the time of the establishment of the trusts the stock was worth approximately $24 per share. The price steadily declined over the years until the shares were finally sold in 1976 at approximately $5 per share. C & S and Golden were dismissed as trustees in 1978 and the beneficiaries filed this action against them contending that the trustees breached their fiduciary duty and negligently managed the trusts by retaining USI stock as the sole corpus while the value declined over the years. The beneficiaries contend that the reason for establishing the trusts at C & S was the bank's assurance of its ability to diversify the corpus and make more secure investments.

The complaint asserts causes of action for breach of contract, breach of fiduciary duty, negligence, bad faith and fraud. The beneficiaries sought to have the trustees reimburse the trusts for lost principal and income and to assess punitive damages and expenses of litigation. On motion by trustees the trial court ruled that the only cognizable cause of action was for an equitable accounting of trust

assets and the only permissible damages would be compensatory damages.

The trustees then submitted affidavits and moved for summary judgment on the claim of breach of duty. Under the language of the trust agreement the trustees contend they were authorized to retain the USI stock and cannot be held liable for damages unless bad faith can be shown. The trial court granted summary judgment to the trustees. Golden had filed a cross claim against C & S for indemnification should the beneficiaries recover. The trial court granted summary judgment to C & S on the ground that the cross claim was moot. Case No. 39180 is an appeal from this order by Golden to preserve his cross claim in the event the main case is reversed.

1. Although numerous errors are raised by the Perlings the outcome of the case rests on an interpretation of the trust agreement itself and this issue is dispositive of these cases. The pertinent parts of the trust instruments provide as follows:

"The trustees shall have . . . the following rights, powers, authorities, exemptions and immunities.

"(1) To retain any assets or property . . . received by the Trustee from the Donor herein. . . .

"To . . . hold . . . any property whatsoever . . .

"All such . . . transactions shall be upon such terms and conditions and at such prices as the Trustee may deem advisable, regardless of whether or not such investment or transaction is authorized by law as permitted investments or transactions for a trustee; and *any investment retained by the Trustee in good faith shall be proper, although of a kind or in an amount or proportion not authorized by law as suitable for the Trustee.*

"Without limiting the generality of the above and foregoing paragraph the Trustee is specifically authorized and empowered to invest any part or all of the trust property, assets or funds in any of the securities of any corporation of which the Donor is one of the principal stockholders — all without regard as to other assets or property, if any, which may form part of the trust fund or assets."

Under the above language the trustees contend that the donor agreed that the trustee would not be liable for losses so long as the trustee exercised good faith, i.e., was not guilty of dishonest or fraudulent acts. Specifically they point out that the trustee is authorized to retain assets and that any asset held in good faith was proper. On the other hand, the appellants contend that the language merely authorizes or gives powers to retain and obtain certain assets that would not be considered as suitable for trustees, but that in exercising these broader powers the acts of a trustee must be judged

by the standard of ordinary prudence.

That there is a paucity of law in Georgia on the liability of trustees for investment losses is an understatement. The Perlings rely heavily on language in *Clark v. Clark,* 167 Ga. 1 (144 SE 787) (1928) and the trustees on the holding in Hoffman v. First Virginia Bank, 263 SE2d 402 (Va. 1980) which they contend is on all fours with the present case and correctly expresses trust law theory. This court has had the benefit of oral argument and numerous briefs discussing cases from other jurisdictions and legal texts. The highest court in North Carolina faced a similar situation in Lichtenfels v. North Carolina Nat. Bank, 268 N. C. 467 (151 SE2d 78) (1966). "The discussions involved the Massachusetts, New York, and Pennsylvania rules, the prudent man, the all eggs in one basket, the bad faith and gross negligence rules, and cite cases, textbooks and law review articles sufficient to keep a slow reader busy from now until Christmas." Lichtenfels at p. 85. While textbooks and other jurisdictions are illuminating we must apply the rules of construction of this state to the law existing at the time the trusts were created.

In construing trusts as well as other instruments this court must interpret the language to effectuate the intent of the settlor within the guidelines of the law, *Armistead v. Trust Co. of Ga.,* 180 Ga. 148 (177 SE 787) (1934); *Love v. Fulton Nat. Bank,* 213 Ga. 887 (102 SE2d 488) (1958). In the event of doubtful or ambiguous language our courts adhere to the rule of contra proferendum, construing the language against the maker of the document. *Kennedy v. Brand Bkg. Co.,* 245 Ga. 496 (266 SE2d 154) (1980). It was conceded at argument that a party to a trust agreement may waive the statutory standard of care. The Perlings argue that such a limitation or liability must be plain, clear and unequivocable language as in the construction of indemnification clauses. See *Batson-Cook Co. v. Ga. Marble Co.,* 112 Ga. App. 226 (144 SE2d 547) (1965). C & S contends the language in the instrument clearly waives the statutory standard and substitutes a good faith-bad faith standard. The Restatement of Trusts, Second § 222 provides that a trust instrument may relieve the trustee of liability for breach of trust except for bad faith, intentional or reckless breach of trust. Comment a. of that section notes that any exculpatory clause should be strictly construed. We hold such a construction is in accordance with Georgia law.

In Hoffman v. First Virginia Bank, supra, relied upon by the trustees, the court held that the trust instrument had waived the prudent man standard and there could be no liability absent dishonesty, bad faith or abuse of discretion. The language of the trust instrument gave the trustees the authority to retain investments "... *without liability* on the part of any fiduciary *for depreciation in the*

*value of the securities retained* in accordance with this authorization." (Emphasis added.) Hoffman at 405. Virginia applies the prudent man rule to trust investments by a trustee. The court in Hoffman ruled that the language was unambiguous and found the instrument waived the prudent man rule. Although the language in the Hoffman instrument is somewhat stronger than that in the instrument before us the difference is not so great as to make the cases distinguishable.

In Steiner v. Hawaiian Trust Co., 393 P2d 96 (1964), the court interpreted an instrument which like ours authorized the trustee to retain the initial investment. In addition the settlor had communicated to the trustee his desire that certain stock be retained. The court held the trustee was still bound by the prudent man rule and was liable for negligent and improper retention of the stock. The New Jersey Court in Blauvelt v. Citizens Trust Co., 71 A2d 184 (N.J. 1950) found no liability for depreciation of assets where the language of the trust authorized the trustees to retain stocks and stated explicitly that there be no liability on the trustee for depreciation in value while so retaining. In addition to this language the court went further and found no negligence. The Pennsylvania court held that language which authorized retention of investments as long as it appeared "advisable" to trustee was not specific enough to waive the trustee's duty to exercise reasonable skill and caution. In re Lentz' Estate, 364 Pa. 304 (72 A2d 276) (1950). An examination of the cases cited in the numerous brief shows the result in a given case is controlled by the language of the instrument as construed under particular state laws and general trust principles.

At the time the instruments in question were executed Georgia trustees were governed by the so-called legal list rule. *Recent Developments in Georgia Fiduciary Law: An Update on Legislation and Litigation.* 9 Ga. SBJ 9 (1972). Under the legal list rule a trustee was limited to investment authorized by law; for a collection of various code sections setting forth these legal investments see *Trustee Investment — Legal List,* 15 Mer. L. Rev. 530 (1964), and an update in *Trusts — Trustee Investments — The Return of the Prudent Investor Rule,* 24 Mer. L. Rev. 513 (1973).

In 1972 the prudent man rule was enacted and provided an additional regulation under which a trustee can manage the estate. OCGA § 53-8-2 (Code Ann. § 113-1531). The prudent man statute became effective in Georgia after the execution of the instruments before us and we cannot consider it in deciding these cases.

Under the legal list rule the settlor or donor could by the language of a particular instrument grant the trustee powers to make investments other than those on the legal lists. See *Armistead v.*

*Trust Co. of Ga.,* supra. Thus the practice in Georgia was to draw instruments giving trustees power to retain and buy investments without securing a court order to ensure trustees the freedom to make other and more profitable investments. See *Fiduciary Problems of the Executor and Trustee: Conflicts of Interest, Violations of Fiduciary Duties; Surcharge and Other Remedies of Beneficiaries* by Devereaux F. McClatchey, 9 Ga. SBJ 187 (1972).

In examining the language of the Perling Trusts we find it is clear that the donor intended to authorize the trustees to make non-legal investments.

The trustees thus having been released from the restrictions of the legal list rule, the question arises as to what standard of conduct then governs the trustees. We hold that where the trust instrument relieves a trustee of the restraints of the legal list but imposes no standard of conduct the trustee is then bound to exercise the judgment and care, under the circumstances then prevailing, which men of prudence, discretion, and intelligence exercise in the management of their own affairs, not in regard to speculation but in regard to permanent disposition of their funds, considering the probable income as well as the probable safety of their capital.

The next step in the decisional process of these cases is whether a settlor or donor may relieve a trustee of the duty of acting as a prudent man. We hold that such can be done but only if the language of the instrument is clear and unambiguous in the expression of the intent. Even so the duty to act in good faith cannot be waived.

We are now left with the task of determining whether the provisions of the trust agreements in issue in this case clearly and unambiguously express an intent to relieve the trustees of the duty to act as prudent men. Looking at the language of the instruments we conclude that the expression of intent is clear and unambiguous. The statement that "any investment retained in good faith is proper" has a plain meaning. We do not find that the language following these words modified their meaning. Having reached this conclusion it is unnecessary to treat the remaining questions raised in the main appeal.

2. The trial court granted summary judgment to C & S on Golden's indemnification action against it because the Perlings claim failed. Since we affirm the judgment in favor of both trustees we also affirm the court's ruling that no claim for indemnification exists.

*Judgment affirmed. All the Justices concur, except Hill, C. J., and Smith, J., who dissent.*

DECIDED MARCH 1, 1983 —
REHEARING DENIED IN CASE NO. 39179 MARCH 16, 1983.

*Webb, Daniel & Betts, Paul Webb, Jr., David E. Betts, Keith M. Wiener,* for appellants (case no. 39179).

*Trotter, Bondurant, Griffin, Miller & Hishon, John T. Marshall, Robert L. Connelly, Jr., William E. Hoffmann, Jr., Jeffrey M. Smith,* for appellees.

*William E. Hoffmann, Jr., Jeffrey M. Smith, Jeffrey O. Bramlett,* for appellant (case no. 39180).

*John T. Marshall, Robert L. Connelly, Jr., Paul Webb, Jr., David E. Betts, Keith M. Wiener,* for appellees.

HILL, Chief Justice, dissenting.

I must disagree with the majority opinion because in my view it adopts an erroneous rule. The facts are simple: Mr. Perling desired to establish trusts for his daughters using USI stock, with C & S Bank and Golden as trustees. USI stock was not on the legal list. The trust agreement therefore included the following language: "[A]ny investment made or retained by the Trustee in good faith shall be proper, although of a kind or in amount or proportion not authorized by law as suitable for the trustees."

The majority holds that the foregoing language clearly and unambiguously (as it must) expresses the intent of the settlor (as it must) to relieve the trustee of the duty to exercise prudence. I must disagree.

Since 1863 our law has provided that "Trustees having possession of the trust property are bound to exercise ordinary diligence in the preservation and protection of the same." OCGA § 53-13-51 (Code Ann. § 108-402).

Can it be said as a matter of law, as the majority does, that the settlor agreed to pay these trustees so that they might wisely and efficiently manage substantial assets for the benefit of his daughters, *and* that he clearly intended to waive his statutory right that they exercise ordinary care? I think not. True, the trustees might have obtained just such a waiver. But see II Scott on Trusts § 222.3 (1956). But because common sense dictates that it is unlikely that a settlor would knowingly waive the standard of ordinary care, the law wisely provides, as the majority recognizes, that any such waiver must be clear and unambiguous. Restatement Trusts 2d, § 222, comment a. The language involved here, I submit, is not a clear and unambiguous waiver of the statutory right to insist upon the exercise of ordinary diligence.

What the settlor agreed to is that the trustees are not liable as long as they act in good faith. Does not "in good faith" mean

"non-negligently?" Surely the settlor did not conceive of the possibility that the language used could be construed to mean that the trustees need not exercise ordinary diligence. That, it seems to me, was precisely what he was paying them to do, at a minimum. No doubt he hoped for more. No doubt he hoped for sagacity, minute and constant attention, and even a measure of luck. But he did not strike a bargain entitling him to that. No doubt he could not have struck such a bargain. Nor, in my opinion, could the trustees have struck the bargain which the majority opinion credits them with. Whether they *could* have is not, of course, the question. The question is whether they clearly and unambiguously did, and I submit that they did not — and that we effect an injustice when we determine the settlor's intent as a matter of law and disallow the beneficiaries the simple right to try to establish a lack of ordinary diligence. I therefore respectfully dissent.

I am authorized to state that Justice Smith joins in this dissent.