**Vernon F. NEUHAUS, Jr. and Lacey Louise Neuhaus, Appellants,**

v.

**Grace Neuhaus RICHARDS, Robert L. Schwarz, Atlas & Hall, Morris Atlas and McAllen State Bank, Appellees.**

No. 13–91–220–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 10, 1992.

Rehearing Overruled Jan. 14, 1993.

Richard F. Neville, III, Mike Maloney, Law Offices of Maloney & Maloney, George LeGrand, San Antonio, Scott Roberts, Charles A. Nicholson, Janis Hillman, and Pat Maloney, Sr., Law Offices of Pat Maloney, P.C., San Antonio, for appellants.

John E. Lewis, Rose Marie Guerra Reyna, Lewis & Pettitt & Hinojosa, McAllen, W. James Kronzer, Leslie C. Taylor, Houston, Paul M. Green, Lang, Ladon, Green, Coghlan & Fisher, San Antonio, for appellees.

Before GILBERTO HINOJOSA, KENNEDY, and DORSEY, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

The present suit arises out of the alleged mismanagement of trust assets by the trustees' failure to sell declining shares of stock before they became worthless. Trust beneficiaries Vernon and Lacey Neuhaus appeal from a take-nothing summary judgment rendered against them and in favor of cotrustees Grace Neuhaus Richards and Robert Schwarz, and in favor of the Atlas & Hall law firm, and Morris Atlas, on the Neuhauses' causes of action for breach of fiduciary duty, civil conspiracy, legal malpractice, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act. The Neuhauses raise four points of error. We hold that a provision of the

Trust Agreement exculpates the trustees from all liability except that arising from willful misconduct or personal dishonesty. Because one of the alleged breaches of fiduciary duty was willful misconduct, the summary judgment was improper. We reverse and remand.

In 1976, V.F. and Gertrude Neuhaus executed a Trust Indenture Creating the Neuhaus Family Trusts, which established a number of separate individual trusts for the benefit of their children and grandchildren. Vernon and Lacey Neuhaus are the respective beneficiaries of two of these trusts. At all times relevant to the present suit, these two trusts were both managed by the same cotrustees, Grace Neuhaus Richards, a member of the Neuhaus family, and Robert Schwarz, a member of the law firm of Atlas & Hall.

The initial corpus of both trusts consisted of stock in McAllen State Bank. However, in July 1982, pursuant to an agreement whereby First City Bancorporation of Texas, Inc., acquired all of the stock of McAllen State Bank, First City substituted its own stock for the McAllen State Bank stock in the trusts. From 1985 through 1987, the First City stock declined in value, but the trustees refused to sell until the stock in Lacey Neuhaus' trust became virtually worthless, and they delayed selling the stock in Vernon Neuhaus' trust until significant losses had been sustained.

The Neuhauses brought their present claims against Richards and Schwarz as cotrustees, and against the law firm of Atlas & Hall and Morris Atlas, a member of that firm. The Neuhauses alleged generally that their causes of action arose out of the management of trust assets in the form of the First City bank stock.

Specifically, the Neuhauses asserted causes of action against Richards, Schwarz, and Atlas & Hall, for breach of fiduciary duties under both the trust indenture and the Texas Trust Code by cotrustees Richards and Schwarz's failure to sell the First City stock. The Neuhauses alleged that

the cotrustees not only failed to exercise the judgment and care of a person of ordinary prudence by their failure to sell the stock, but that they were also liable for willful misconduct and a conscious disregard for the rights and welfare of the beneficiaries.

In addition, the Neuhauses asserted other causes of action based on the cotrustees' failure to sell the First City stock. They asserted a legal malpractice action against Schwarz and Atlas & Hall for negligent representation of and advice to the trust. They alleged that Schwarz, Morris Atlas, and Atlas & Hall entered into a civil conspiracy to bring about a breach of fiduciary duty. Finally, the Neuhauses alleged that Schwarz, Morris Atlas, and Atlas & Hall's actions violated the DTPA.[1]

The appellees brought motions for summary judgment on the ground that both the trust indenture and the Texas Trust Code relieved the cotrustees of liability for depreciation of the trust assets. The trial court granted a final take-nothing summary judgment against the Neuhauses.

By their first point of error, the Neuhauses complain generally that the appellees failed by their motions for summary judgment to conclusively negate any element of the Neuhauses' causes of action.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding a summary judgment, evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in the nonmovant's favor, and any doubts must be resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant who moves for summary judgment has the burden of showing by summary judgment evidence that at least one element of the plaintiff's cause of action has been conclusively established against the plaintiff. *Sakow-*

---

1. We note that the Neuhauses also brought causes of action against First City bank and to remove Richards and Schwarz as trustees. However, these causes of action were voluntarily dismissed.

*itz, Inc. v. Steck,* 669 S.W.2d 105, 107–08 (Tex.1984); *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970).

By their second point of error, the Neuhauses complain that neither the exculpatory clause in the trust indenture nor the provisions of the Texas Trust Code relieved the appellees of liability for their willful misconduct. By their third point of error, the Neuhauses more specifically complain that the Texas Trust Code, Tex.Prop.Code Ann. § 113.003 (Vernon 1984), which permits retention of the initial trust corpus without liability, does not apply to the present stock because it mutated from its original status as McAllen State Bank stock to First City stock.

We agree that the provisions of the present trust indenture do not relieve the appellees of their duty to manage or sell the First City stock, and that, although the trust indenture may alter the standard of care by which the appellees' conduct is judged, the appellees are still liable for their willful misconduct. In addition, we hold that section 113.003 does not apply to the First City stock. For these reasons, the trial court erred in granting summary judgment in favor of the appellees on the claims for breach of fiduciary duty by willful misconduct.

### DUTY OF TRUSTEE TO MANAGE TRUST PROPERTY

We initially review the duty of a trustee to manage trust property and the ability of the settlor to alter that duty in the trust instrument.

■ The fundamental duties of a trustee include the use of the skill and prudence that an ordinary, capable, and careful person would use in the conduct of his own affairs and loyalty to the beneficiaries of the trust. *Interfirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 888 (Tex.App.—Texarkana 1987, no writ). Texas Trust Code § 113.056(a) (Vernon Supp.1992) provides with regard to the duties and liabilities of a trustee to properly manage and invest trust funds that:

Unless the terms of the trust instrument provide otherwise, in acquiring, in-vesting, reinvesting, exchanging, *retaining*, selling, supervising, and managing trust property ... a trustee shall exercise the judgment and care under the circumstances then prevailing that persons of ordinary prudence, discretion, and intelligence exercise in the management of their own affairs.... [Emphasis added]

■ In particular, one of the basic duties of a trustee is to make the assets of the trust productive while at the same time preserving the assets. *Id.* at 900. Restatement (Second) of Trusts § 231 (1959) states that "[e]xcept as otherwise provided by the terms of the trust, if the trustee holds property which when acquired by him was a proper investment, but which thereafter becomes an investment which would not be a proper investment for the trustee to make, it becomes the duty of the trustee to the beneficiary to dispose of the property within a reasonable time."

■ Under these principles, it would appear in the present case that the appellees could be held liable for failing to sell the First City stock if their decision not to sell was imprudent. However, the settlor may within the trust instrument relieve the trustee of certain duties, restrictions, responsibilities, and liabilities imposed on him by statute. *Risser,* 739 S.W.2d at 888. Specifically, Texas Trust Code § 113.059(a) (Vernon 1984), provides that, except with regard to certain self-dealing transactions, the settlor "may relieve the trustee from a duty, liability, or restriction imposed by this subtitle." In addition, the language of section 113.056(a) imposing a prudent person standard on the trustee "[u]nless the terms of the trust instrument provide otherwise," specifically implies that the settlor may modify the trustee's duty to act as a prudent person in the management of the trust assets. Thus, if the language of the trust instrument unambiguously expresses the intent of the settlor, the instrument itself confers the trustee's powers and neither the trustee nor the courts may alter those powers. *See Jewett v. Capital National Bank of Austin,* 618 S.W.2d 109,

112 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.); *Corpus Christi National Bank v. Gerdes*, 551 S.W.2d 521, 523 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). ◦ However, exculpatory clauses are strictly construed, and the trustee is relieved of liability only to the extent that the trust instrument clearly provides that he shall be excused. *Jewett*, 618 S.W.2d at 112.[2]

## EXCULPATORY PROVISIONS OF THE TRUST INDENTURE

■ In the present case, the appellees point to two supposedly exculpatory provisions in the present trust indenture: section V(k) and section V(v). Section V(k) concerning the selection and retention of investments provides that:

All property transferred by gift to any trust and any property acquired by the Trustees as herein provided and from time to time constituting any part of any trust shall be deemed a proper investment, and the Trustees shall be under no obligation to dispose of or convert any such property. Investments need not be diversified, may be of a wasting nature, and may be made or retained with a view to possible increase in value. The Trustees may invest and reinvest all funds available for investment or reinvestment from time to time or at such times as they may deem advisable in such investments as they are permitted to make pursuant to the terms of this indenture. They are expressly authorized to invest in non-income-earning or producing property if in their judgment the best interest of the particular trust will be served thereby. The Trustees, except as herein otherwise specifically provided, shall have as wide latitude in the selection, retention and making of investments as an individual would have in retaining or

investing his own funds, and shall not be limited to nor be bound or governed by the laws or regulations of the State of Texas or any other state or country in respect of investments by trustees, except to the extent that such laws and regulations may not be waived.

The appellees suggest that section V(k) completely relieves them of any duty to sell the First City stock, and thus of any liability to the beneficiaries for failure to sell the stock. Specifically, they point to the provision that any property acquired by the trust "shall be deemed a proper investment, and the Trustees shall be under no obligation to dispose of or convert any such property." However, we hold that this provision is ambiguous.

■ A written instrument is ambiguous when its meaning is uncertain and doubtful or it is reasonably subject to more than one meaning. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). In the present case, section V(k) leaves uncertain whether the appellees are still under a duty to prudently manage and, if need be, sell an investment that is otherwise deemed proper, and whether the obligation to dispose of assets, of which the appellees are relieved, includes the generalized duty to manage the trust prudently, or merely relieves the appellees of any specific obligation to sell a particular kind or class of investments.

Contrary to the appellees' interpretation, it seems equally plausible that this provision was added in an abundance of caution in view of prior law which had severely restricted the type of investments that the trustee could make to a statutorily authorized list. *See* Tex.Rev.Civ.Stat.Ann. art. 7425b–46 (repealed) (prior to 1945 amendment which eliminated the restrictions). Considering these prior restrictions, the settlor may have been leery of possible

**2.** In *Jewett*, for instance, the beneficiaries sued the trustee for failing to sell stock which steadily declined in value over the years until it became virtually worthless. The trust instrument allowed the trustee "to invest in those assets, even though they may be of a speculative nature, which promise to yield the greatest return and result in maximum appreciation of corpus; and they are hereby relieved from all liability

for any loss of the trust funds resulting from the investment and reinvestment of the trust funds in any speculative business or venture." *Id.* at 111. Nevertheless, the court held that this exculpatory provision did not relieve the trustee of liability for failing to review the trust periodically or failing to diversify the corpus of the trust.

future restrictions that might be placed on a trustee's power to manage and invest the trust assets. Thus, the provisions of section V(k) could be interpreted narrowly to mean that investments not statutorily authorized would still be deemed proper and that the trustee would be under no obligation to dispose of or convert such investments in the sense of a specific statutory duty to conform to a list of authorized investments. Nevertheless, imprudent retention of such investments might still amount to a breach of trust for which the trustee could be held liable by the beneficiaries.

When a written instrument contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991); *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Coker*, 650 S.W.2d at 394; *Gaulden v. Johnson*, 801 S.W.2d 561, 565 (Tex.App.— Dallas 1990, writ denied). Therefore, for purposes of the present summary judgment, we must interpret section V(k) not to extinguish the appellees' duty to sell the First City stock if prudence required it.

In addition, even if we were to accept the appellees' interpretation that this section generally relieved them of a duty to sell or of liability for failing to sell the First City stock, nevertheless, it could not have validly relieved them of all liability for failing to sell the stock. Under Texas law, an exculpatory provision in the trust instrument is not effective to relieve the trustee of liability for action taken in bad faith or for acting intentionally adverse or with reckless indifference to the interests of the beneficiary. *Interfirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882, 888 (Tex.App.—Texarkana 1987, no writ) (citing Restatement (Second) of Trusts § 222 (1959) [3]); *see also Gerdes*, 551 S.W.2d at 524.

Though Texas courts have not addressed this particular issue, courts in other states have specifically restricted the extent to which the settlor may limit the trustee's liability for failure to sell unproductive trust investments. Those courts have held that the trust instrument may relieve the trustee of the duty to act as a prudent man in determining to retain unproductive property, but not of the duty to do so honestly, in good faith, and without willful misconduct or reckless indifference to the interests of the beneficiaries. *See Stark v. United States Trust Co.*, 445 F.Supp. 670, 683 (S.D.N.Y.1978); *Perling v. Citizens and Southern National Bank*, 250 Ga. 674, 300 S.E.2d 649, 653 (1983); *Hoffman v. First Virginia Bank*, 220 Va. 834, 263 S.E.2d 402, 407–08 (1980); 90 C.J.S. *Trusts* § 331 (1955). In other words, the trustee's determination to retain unproductive investments is generally protected as long as that determination was not made dishonestly, in bad faith, recklessly or with the intent to harm the trust.

Turning to the second exculpatory provision relied upon by the appellees, section V(v) concerning the liability of trustees provides that "[n]o Trustee shall be liable for negligence or error of judgment but shall be liable only for his willful misconduct or personal dishonesty." This section generally seems to follow the allowable exculpatory provisions discussed above. *See Risser*, 739 S.W.2d at 888; *see also Stark; Perling; Hoffman.* Thus, under this general exculpatory provision, the appellees are not held to the prudent person standard but may be liable only for willful misconduct or personal dishonesty. Accordingly, we must determine whether the Neuhauses causes of action against the appellees are barred as a matter of law by section V(v).

As we stated earlier with regard to the pleadings, the Neuhauses alleged that in failing to sell the First City stock the appellees not only failed to act prudently,

---

**3.** A provision in the trust instrument is not effective to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary, or of liability for any profit which the trustee has derived from a breach of trust. Restatement (Second) of Trusts § 222(2) (1959).

but also that they acted out of willful misconduct. The appellees contend that, because the Neuhauses failed to show that appellees intended to cause a loss, the Neuhauses have not alleged a cause of action for willful misconduct. The question on summary judgment, however, is not whether the Neuhauses specifically alleged how the appellees acted out of willful misconduct. The Neuhauses could, perhaps, have been forced to plead more specifically by way of a special exception. *See McFarland v. Reynolds*, 513 S.W.2d 620, 626 (Tex.Civ.App.—Corpus Christi 1974, no writ). On summary judgment, the question is whether the appellees conclusively showed that in failing to sell the stock they did not act out of willful misconduct. It was not the Neuhauses' burden to prove their causes of action, but the appellees' burden to negate them. *See Sakowitz*, 669 S.W.2d at 107–08; *Gibbs*, 450 S.W.2d at 828. Because the appellees made no attempt by summary judgment evidence to negate these allegations of willful misconduct, summary judgment should not have been granted in their favor on the basis of the exculpatory provisions of the trust indenture. We sustain the Neuhauses' second point of error.

### TEXAS TRUST CODE § 113.003

As we stated earlier, by their third point of error the Neuhauses complain that Texas Trust Code § 113.003 does not apply to the First City stock because it came into the trust in exchange for the McAllen State Bank stock.

■ Initially, we address the appellees' contention that the Neuhauses' claim that section 113.003 does not apply to bar their causes of action is an affirmative defense which the Neuhauses failed to support by summary judgment evidence. We agree with the appellees that, if the party opposing summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Brownlee v. Brownlee*, 665 S.W.2d 111 (Tex.1984).

■ However, in the present case, the application of section 113.003 to the stock was an element of appellees' defense to the Neuhauses' causes of action. The fact that section 113.003 clearly would have applied had there been no exchange of stock did not then shift the burden to the Neuhauses to show as an affirmative defense that the exchange of stock made section 113.003 inapplicable; rather, it remained the appellees' burden to show the applicability of section 113.003 to the exchanged stock.

■ The burden of proof in a summary judgment proceeding never shifts to the non-movant until the movant has established his entitlement to a summary judgment by conclusively proving all essential elements of his cause of action or defense. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). An essential element of the appellees' defense was the applicability of section 113.003 to the exchanged stock.

■ We now turn to the Neuhauses' claim that section 113.003 does not apply to the First City stock. Section 113.003 provides that "[a] trustee may retain, without regard to diversification of investments and without liability for any depreciation or loss resulting from the retention, any property that constitutes the initial trust corpus or that is added to the trust." [4]

■ As distinguished from the exculpatory provisions which may be written into a trust instrument and their narrow and limited interpretation, this section of the Trust Code appears to statutorily relieve the trustee of *any* liability for retention of either (1) initial trust corpus, or (2) proper-

---

4. Although the Neuhaus Family Trusts were created in 1976, before the 1984 effective date of the Texas Trust Code and specifically section 113.003 thereof, the Code applies to transactions occurring after its effective date. *See* Tex.Prop. Code Ann. § 111.006 (Vernon 1984). The present causes of action for failure to sell the stock involve transactions or breaches allegedly occurring from 1985 through 1987.

ty that is added to the trust.[5] Therefore, we must determine whether the First City stock is subject to section 113.003 as either initial trust corpus or added property. We conclude that it is neither.

The original McAllen State Bank stock was certainly a part of the initial trust corpus. However, after the acquisition or merger by First City, we must determine whether the substituted First City stock should be considered to have carried over from the McAllen State Bank stock its status as initial trust corpus.

Other sections of the Texas Trust Code are instructive. Texas Trust Code § 113.-016(5), concerning the management of securities, states that a trustee may "sell any stock or other securities obtained by conversion, reorganization, consolidation, merger, liquidation, or the exercise of subscription rights free of any restrictions upon sale otherwise contained in the trust instrument relative to the securities originally held." This provision implies that substituted or exchanged shares of stock are, for purposes of directives in a trust instrument, to be treated as different from the original stock and not subject to the same restrictions thereon.[6] Similarly, we hold that substituted or exchanged stock should also be treated as a different asset from the original stock for purposes of section 113.003. In the present case, there-

---

**5.** For some of the same reasons set forth in our discussion of exculpatory clauses, however, we believe that a narrow interpretation of the statute is in order in view of its apparent elimination of duties that seem fundamental to the nature of the trustee's role as a fiduciary. In addition, a brief review of the legislative history of the present Texas Trust Code suggests that the Texas Legislature did not intend to enact any substantive changes from the prior Texas Trust Act, which contained no provision similar to section 113.003.

The present Texas Trust Code, including section 113.003, originated in the 68th Texas Legislature as Senate Bill 701. At the hearing on Tex.S.B. 701 before the Senate Committee on State Affairs, 68th Leg. (March 23, 1983), and again during floor debate in the Senate (March 30, 1983), supporters of the bill represented the Trust Code to be merely a codification and update of the Trust Act, with only minor changes to reflect court decisions and modern approaches to trust law. In addition, they represented that the new Trust Code contained no substantive changes which would be contrary to the interests of the beneficiaries of a trust. At the hearing on the companion bill, Tex.H.B. 1139, before the House Committee on Judicial Affairs, 68th Leg. (April 5, 1983), supporters of the bill again made similar representations that it would merely update existing law to meet current conditions and not impair traditional principles of equity and common law.

However, section 113.003 appears to be a substantial departure from the provisions of the prior Texas Trust Act and unrelated to any particular provision of the act. Guide to the Texas Trust Code, State Bar of Texas, Section on Real Estate, Probate and Trust Law (1983), which was distributed to members of the Texas Legislature as a commentary on the proposed Texas Trust Code, notes that section 113.003 was derived from section 46 of the prior Texas Trust Act, Tex.Rev.Civ.Stat.Ann. art. 7425b–46 (repealed), which was generally carried forward as

section 113.056 of the Texas Trust Code, concerning the standard for trust management and investment. In particular, the Guide states that section 113.056(c) is a corollary provision to section 113.003. Section 113.056(c) (Vernon 1984) states, in substantially similar terms as in article 7425b–46(A), that "[w]ithin the limitations of Subsection (a) of this section [concerning the prudent person standard], a trustee may indefinitely retain property acquired under this section without regard to its suitability for original purchase." Unlike section 113.003, however, section 113.056(c) and its predecessor in the prior Texas Trust Act do not purport to eliminate the trustee's liability for depreciation or loss and specifically subject the trustee's decision to retain property to the underlying prudent person standard. Thus, it appears that the Guide was misleading concerning the origins of section 113.003.

Under these circumstances, we believe that Texas Trust Code § 113.003 should be construed as narrowly as possible.

**6.** Out-of-state authority also suggests that there is a substantive difference between the original stock and the substituted stock. When a trustee is directed or authorized to retain the shares of stock of a certain corporation as a part of the trust property and the corporation is later merged into or with another corporation, the trustee's duty or authorization to retain the new shares depends upon whether they are substantially equivalent to the old ones, considering among other things the similarity of the sphere of activity, products manufactured, and the capital structure of the old and new corporations. *See Hirsh v. Hirsh*, 209 Va. 630, 166 S.E.2d 286, 288–89 (1969); *Farr v. First Camden Nat. Bank & Trust Co.*, 4 N.J.Super. 89, 66 A.2d 444, 446 (N.J.Super.Ct.App.Div.1949); *Mertz v. Guaranty Trust Co.*, 247 N.Y. 137, 159 N.E. 888, 889 (1928); Restatement (Second) of Trusts § 231 comment f (1959); *see also Mazzola v. Myers*, 363 Mass. 625, 296 N.E.2d 481, 489 n. 13 (1973).

fore, the First City stock was not a part of the initial trust corpus.

We also determine that the First City stock may not be considered property that has been "added" to the trust under section 113.003. Although a literal interpretation of "added" property may include the First City stock, as property added by exchange, it would also logically include any investment purchased with trust funds, as property added by purchase, and in effect would encompass all trust property. It seems unreasonable to suggest that section 113.003 allows the trustee to retain any asset in the trust without liability or obligation to prudently manage it or to sell it if it becomes unproductive. Moreover, this construction would be inconsistent with other provisions of the Trust Code and with case law which suggest that the trustee does have a duty to sell unproductive or underproductive property. *See Perfect Union Lodge No. 10, A.F. and A.M., of San Antonio v. InterFirst Bank of San Antonio,* 748 S.W.2d 218, 221 (Tex.1988); Tex.Prop.Code Ann. § 113.110 (Vernon Supp.1992) (Underproductive Property); Tex.Prop.Code Ann. § 113.056 (Vernon Supp.1992) (Standard for Trust Management and Investment).

Instead, we prefer to interpret the language of 113.003 narrowly to mean that the newly acquired trust asset must have been added by gift rather than purchased or received in exchange for other trust funds or assets. Under this construction, the First City stock is not added property.

Since we find that Texas Trust Code § 113.003 does not apply to the First City stock, summary judgment should not have been granted on the basis that this statute relieved the appellees of any duty to sell or liability for failing to sell the stock. We sustain the Neuhauses' third point of error.

## DERIVATIVE CAUSES OF ACTION

By their fourth point of error, the Neuhauses complain that the summary judgment erroneously disposed of their other causes of action for civil conspiracy, legal malpractice, and violations of the DTPA, which were all treated by the motions for summary judgment and by the trial court as derivative of their claims for breach of the appellees' fiduciary duty to sell the stock. Having found that the plaintiff had a viable cause of action for breach of fiduciary duty by willful misconduct in failing to sell the stock, those other causes of action that arose from that misconduct remain. Summary judgment was improperly granted on the other alleged derivative causes of action that stem from the trustee's personal dishonesty or willful misconduct. The Neuhauses' fourth point of error is sustained.

We REVERSE the judgment of the trial court and REMAND this case for trial.